# Exhibit I



April 28, 2026

**Sent Via Email**

Dr. Michelle C. Reid
Superintendent
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042

**RE:   Regulation 2603 and Accompanying Guidance Related to Gender-Expansive and Transgender Students**

Dear Dr. Reid:

America First Legal Foundation ("AFL") represents Stephanie Lundquist-Arora, whose three children are enrolled in Fairfax County Public Schools ("FCPS").

On our client's behalf, we write to address the incompatibility of FCPS Regulation 2603, "Gender-Expansive and Transgender Students," and its accompanying Guidance Document with the U.S. Supreme Court's recent decision in *Mirabelli v. Bonta*.[1] As currently drafted and implemented, these policies infringe upon parents' constitutional rights and violate the Family Educational Rights and Privacy Act ("FERPA").[2]

Unless FCPS rescinds these policies in full or establishes a process for obtaining an exemption by May 18, 2026, AFL will initiate federal litigation on behalf of its client.

## I.    FCPS's policies are unconstitutional.

In *Mirabelli v. Bonta*, the Supreme Court held that parents were likely to succeed on the merits of their Free Exercise Clause and Due Process Clause claims challenging California policies that facilitate a student's social gender transition at school without parental knowledge or consent.[3] The Court explained that such policies trigger strict scrutiny—the most demanding form of constitutional review—because they

---

[1] 146 S. Ct. 797 (2026).

[2] 20 U.S.C. § 1232g.

[3] *Mirabelli*, 146 S. Ct. at 802–03.

"substantially interfere with the 'right of parents to guide the religious development of their children.'"[4]

*Mirabelli* built directly on *Mahmoud v. Taylor*, which invalidated a school policy denying parents notice and opt-out rights with respect to "LGBTQ+-inclusive" curricular materials that conflicted with their religious beliefs.[5] In *Mirabelli*, the Court expressly rejected any effort to confine *Mahmoud* to curricular contexts, emphasizing that the "unconsented facilitation of a child's gender transition" constitutes an even more significant intrusion on parental rights.[6]

Applying these principles, the Court concluded that California's policies were unlikely to survive constitutional scrutiny. Although the State asserted a compelling interest in promoting student safety and privacy, the Court held that the policies impermissibly "cut out the primary protectors of children's best interests: their parents."[7] The Court further determined that the policies were not narrowly tailored, explaining that the State's interests could be achieved through less restrictive means—for example, by allowing religious exemptions while limiting disclosure only where there is a credible risk of abuse.[8]

The Court also made clear that the constitutional violation is not confined to the Free Exercise Clause. The policies independently implicate the fundamental Due Process right of parents—religious and nonreligious alike—to direct the upbringing and education of their children, including decisions bearing on a child's mental health.[9] Citing longstanding precedent, the Court reaffirmed that primary authority over child-rearing rests with parents, not the State. Because gender dysphoria "has an important bearing on a child's mental health," policies that both conceal relevant information from parents and affirmatively facilitate a child's social transition at school likely infringe these constitutional protections.[10] Even the dissent acknowledged that such policies deprive parents of "information critical to their [children's] health and well-being" and may cross constitutional lines.[11]

FCPS Regulation 2603 and the accompanying "Gender-Expansive and Transgender Students Guidance" ("Guidance Document") suffer from the same—and in several respects more explicit—defects. These policies do not merely omit parental notice. Instead, they create a framework for affirmatively facilitating social transitions while excluding parents and concealing information. Specifically, FCPS:

---

[4] *Id.* at 802 (quoting *Mahmoud v. Taylor*, 606 U.S. 522, 559 (2025)).

[5] 606 U.S. 522 (2025).

[6] *Mirabelli*, 146 S. Ct. at 802.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 803.

[10] *Id.*

[11] *Id.* at 809 (Kagan, J., dissenting).

- Requires staff to accept a student's asserted gender identity without parental notice or consent;[12]

- Requires the formation of "support team[s]" that include parents only if "the student is willing" to do so;[13]

- Mandates the use of a student's chosen name and pronouns at school, "regardless of the name and gender recorded in the student's permanent pupil record," without requiring parental permission.[14]

- Directs staff to facilitate social transition while affirmatively withholding information from parents, stating that there are "no regulations requiring school staff to notify a parent or guardian of a student's request to affirm their gender identity" and that schools "shall not disclose confidential information related to the student's transition" if the student has not shared it;[15]

- Permits access to sex-segregated facilities, including restrooms and locker rooms, based on gender identity without parental involvement;[16] and

- Establishes counseling, support plans, and recordkeeping processes that condition or exclude parental participation, directing that transition-related information "should be discussed only with the persons who are responsible for implementing the plan" and not disclosed without student permission.[17]

Taken together, these provisions create a dual-track system in which FCPS actively supports and documents a student's social transition at school while presenting parents with an incomplete—and materially misleading—account. There can be no serious dispute that FCPS's policies mandate the very conduct the Supreme Court has now condemned. *Mirabelli* enjoins materially indistinguishable practices.

Nor can FCPS plausibly rely on the procedural posture of *Mirabelli* to avoid compliance. Although issued in the context of interim relief, the Court's opinion provides binding and authoritative guidance to lower courts and governmental actors alike.[18]

---

[12] Fairfax County Public Schools, *Regulation 2603.2*, https://perma.cc/966V-7WNT ("Regulation 2603.2") (requiring schools to "accept a student['s] . . . assertion of a student's gender-expansive or transgender status").

[13] *Id.*

[14] *Id.*

[15] Fairfax County Public Schools, *Regulation 2603—Gender-Expansive and Transgender Students Guidance Document* 8 ("Guidance Document"), https://perma.cc/H6XF-LR6G.

[16] Regulation 2603.2, *supra* note 12.

[17] Guidance Document, *supra* note 15, at 8.

[18] *See S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 719 (2021) (Gorsuch, J., statement).

Recent experience confirms as much. Following *Mahmoud*, state education authorities and school districts moved quickly to conform their policies, and the underlying litigation concluded in a costly settlement. The same outcome is likely here given the Supreme Court's unequivocal ruling in *Mirabelli*.

## II.    FCPS's policies violate FERPA.

FERPA guarantees parents the right to inspect and review all "education records" maintained by an educational agency or institution that receives federal funds.[19] An "education record" includes all records that are directly related to a student and maintained by the school.[20]

FCPS's policies contemplate the creation and maintenance of records that plainly qualify as "education records" under FERPA, including student-specific planning tools, staff communications, and Student Information System ("SIS") entries used to generate classroom rosters and support instructional functions.[21] At the same time, the Guidance Document prescribes methods designed to prevent parental awareness and access. For example, the Guidance Document directs: "If a student transitioning at school is not ready to share with their family about their transgender status, this should be respected. In this scenario, school staff should make a change socially, calling the student by the chosen name, while their official SIS information remains the same."[22]

FERPA does not permit a school district to maintain parallel record systems—one used internally to direct and manage a student's educational experience, and another that is incomplete or sanitized for parental review—in order to evade parents' statutory right to inspect and review education records. The statute's coverage turns on substance, not form: records need not be labeled "education records" or placed in a cumulative file to fall within FERPA's scope. If they are maintained by the district and used in making decisions about, or in administering, a student's education, they are subject to parental access.[23]

The Guidance Document's direction to implement "social" changes while preserving official SIS legal fields to avoid parental notification—and to withhold transition-related information absent student authorization—squarely conflicts with FERPA's core access mandate. By design, it ensures that material information about a student's day-to-day educational experience—information relied upon by teachers and administrators—will be excluded from parent-accessible records and

---

[19] 20 U.S.C. § 1232g(a)(1)(A).
[20] 34 C.F.R. § 99.3.
[21] *See, e.g.*, Guidance Document, *supra* note 15, at 9–10.
[22] *Id.* at 10.
[23] *See* 34 C.F.R. § 99.10.

affirmatively withheld in communications with parents. That practice is precisely the type of concealment FERPA prohibits.

## III.    Requested Remedial Action

To avoid litigation, AFL requests that, no later than May 18, 2026, FCPS either:

(1) Rescind Regulation 2603 and the "Gender-Expansive and Transgender Students Guidance" in their entirety, or, at a minimum, immediately suspend their enforcement pending revision to ensure compliance with federal law and the Constitution; or

(2) Adopt and publish a clear, accessible process by which parents may obtain timely notice, full access to all education records, and a meaningful exemption or opt-out from any policy or practice that (a) facilitates or affirms a student's gender transition at school, or (b) withholds information from parents regarding such matters.

In addition, FCPS must immediately preserve all documents and electronically stored information potentially relevant to the claims described herein, including but not limited to policies, guidance, training materials, internal communications, student records (including SIS entries and any parallel or informal record systems), and communications with the Virginia Department of Education. This preservation obligation applies to all custodians and all forms of data and remains in effect pending resolution of this matter.

Should FCPS fail to take these steps, AFL will commence litigation seeking preliminary and permanent injunctive relief, damages, attorneys' fees, and costs.

Thank you for your prompt attention to this important matter.

Sincerely,

*/s/ Rachael Griffin*
Rachael Griffin
Attorney
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C. 20003
(301) 971-2757
rachael.griffin@aflegal.org

CC:    Frank E. Miller Jr., U.S. Department of Education
       Hon. Harmeet Dhillon, U.S. Department of Justice

5