# Exhibit J

1

\*\*\* C O N F I D E N T I A L \*\*\*

VIRGINIA:

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

-------------------------------------
                                     :
JANE DOE,                            :
                                     :
        Petitioner,                  :
                                     :
    v.                               :  Case No.
                                     :
FAIRFAX COUNTY SCHOOL BOARD,         :  Cl24-3171
                                     :
        Respondent.                  :
                                     :
-------------------------------------

        The deposition of BETHANY DEMERS, a 45(b)(6)

witness herein, held at Dunlap, Bennett & Ludwig,

PLLC, convened at 1:07 p.m. Eastern Daylight Time, on

Thursday, August 21, 2025 and the proceedings being

taken down by stenotype and transcribed by Catherine

B. Crump, a Notary Public in and for the Commonwealth

of Virginia.

CONFIDENTIAL

Demers, Bethany                                        August 21, 2025

2

APPEARANCES:

On behalf of the Petitioner:

    IAN D. PRIOR, ESQ.

    NICHOLAS BARRY, ESQ.

    ROBERT CROSSIN

    America First Legal Foundation

    611 Pennsylvania Avenue, S.E., Suite 231

    Washington, D.C.  20003

    (202) 836-7958

    ian.prior@aflegal.org


On behalf of the Respondents:

    NOAH P. SULLIVAN, ESQ.

    Gentry Locke Attorneys

    919 E. Main Street, Suite 1130

    Richmond, Virginia  23219

    (804) 956-2062

    nsullivan@gentrylocke.com

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

3

APPEARANCES (Continued):

SONA REWARI, ESQ.

Hunton, Andrews, Kurth, LLP

2200 Pennsylvania Avenue, N.W.

Washington, D.C.  20037

(202) 955-1974

srewari@hunton.com


VIDEOGRAPHER:  JON RASSON

CONFIDENTIAL

Demers, Bethany                                        August 21, 2025

4

I N D E X

WITNESS:  Bethany Demers

EXAMINATION                                    PAGE

  By Mr. Prior:                              7

EXHIBIT NO.              DESCRIPTION              IDENTIFIED

1  - Amended Notice of Deposition                21

2  - Regulation 2603, Special Services            24

3  - Regulation 2603, Gender Expansive and

      Transgender Students Guidance Document       27

4  - Code of Virginia, Title 22.1, Education       35

5  - FCSB-035011, Email Chain                      54

6  - FCSB-035606, Email Chain                      80

7  - Model Policies for the Treatment of

      Transgender Students                         90

8  - Regulation 2603.1                             91

9  - Regulation 2603.2                             92

10 - Model Policies on Ensuring Privacy, Dignity,

      and Respect for All Students and Parents   112

11 - Student Rights & Responsibilities           123

12 - Answers to Interrogatories                  128

13 - FCSB_048465, Email Chain                    140

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

5

EXHIBIT NO.              DESCRIPTION                      PAGE

14 - FCSB_050657, Email Chain                       146

15 - Supporting Gender-Expansive and

     Transgender Youth                              151

16 - FCSB_051062, Regulation 2603 Talking Points  155

17 - FCSB-037733, Email Chain                       157

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

60

BY MR. PRIOR:

Q.    Okay.  That's helpful.  Thank you.

Okay.  If you could turn to page 7.

Can you describe to me what this is, the Gender Unicorn that's in this guidance document?

**A.    Well, it provides a visual aid to support in the understanding of some of the terms noted above.**

Q.    Okay.  And is -- and gender identity is preceded by like a rainbow.  Correct?

**A.    Yes.**

Q.    And it has a unicorn that has sort of like a thought bubble with the rainbow.

**A.    Okay.**

Q.    What does that mean?  What's the symbolism of that to the extent you understand?

**A.    I didn't create this visual.  So I can't speak to the symbolism.**

Q.    Okay.  And so I would assume you can't speak to the symbolism of the green dots either around the unicorn.

**A.    No.**

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

61

Q.    Okay.  Or the chromosome right above its legs or the DNA right of its legs, I assume since you didn't do this, this in there, you can't speak to the symbolism of that.  Correct?

**A.    I mean, I can't --**

MR. SULLIVAN:  Objection to misstating testimony and assuming facts not in evidence.

MR. PRIOR:  Sure.

BY MR. PRIOR:

Q.    Can you testify to the symbolism of the DNA symbol on the unicorn?

MR. SULLIVAN:  The document speaks for itself.

MR. PRIOR:  That's why I asked for symbolism.

THE WITNESS:  The rainbow is in a thought bubble.

MR. PRIOR:  Okay.

THE WITNESS:  The green dot is around the unicorn.  The heart is where the heart is.  The two hearts are -- and the chromosomes on the body.

MR. PRIOR:  Okay.

THE WITNESS:  And then it describes each of

CONFIDENTIAL

Demers, Bethany                                      August 21, 2025

62

those things.

BY MR. PRIOR:

Q.    Where it goes to student transitions, it says:  "Not all gender expansive students identify as being transgender.  So transition may look very different for each student and not all people who under a transition desire the same outcome."

Can you define what transition means?

**A.    I would refer you back to page 6, and the definition goes from page 6 to page 7.**

Q.    Okay.  And it talks about if -- it says on that transition definition "refers to the experience by which a transgender person goes from living and identifying as the gender associated with the sex assigned at one's birth to living and identifying as the gender consistent with one's gender identity".  Correct?

**A.    Yes.**

Q.    And then it says:  "A gender transition often includes a social transition during which an individual begins to live and identify as the gender consistent with the individual's gender identity with

CONFIDENTIAL

Demers, Bethany                                        August 21, 2025

63

or without certain medical treatments or procedures."

Correct?

**A.    Yes.**

Q.    Do you have any kind of examples on how FCPS supports a student that's socially transitioning?

**A.    So we support all students based on what they need and we are focused on creating a safe, inclusive environment for every student.  So if a student shares they're socially transitioning, we would follow the steps outlined in Regulation 2603.**

Q.    It says, if you go back to student transitions:  "In most cases, transitioning is a very private matter.  Students may choose to have their parents participate in this process; however, parental participation is not required."

Is that correct?

**A.    What it says or that it's not required?**

Q.    What it says.

**A.    Yes.**

Q.    Is that -- is it the case that parents are not required to participate in social

CONFIDENTIAL

Demers, Bethany                                     August 21, 2025

64

transitioning at school?

MR. SULLIVAN: Objection to form and objection to outside the scope of the topics. I would also further object to the extent that this is outside the scope, this is not a personal deposition. It is a designee deposition. So there should be no questions outside the designated topics.

MR. PRIOR: Okay. You can answer.

MR. SULLIVAN: If you are able to answer subject to those objections.

THE WITNESS: I didn't come prepared to speak to that.

BY MR. PRIOR:

Q. Okay. But it says here parental participation is not required. Correct?

**A. It does say that. It also says on page 8: "Every effort shall be made to encourage and support communication with gender expansive or transgender students and the student's parents or guardians."**

MR. PRIOR: Okay. Let's take a five-minute break, if y'all don't mind, or we can a longer one if

CONFIDENTIAL

Demers, Bethany                                          August 21, 2025

65

you want, but I just need a five-minute break.

        MR. SULLIVAN:  Sure.  We'll go off the
record.

        MR. PRIOR:  The time is 14:11 and we are off
the record.

        [Recess.]

        VIDEOGRAPHER:  The time is 14:18 and we're
back on the record.

BY MR. PRIOR:

        Q.    I want to go back to the gender unicorn
for a second.  Why is this illustration included in
this guidance document?

        **A.    As educators, we know that people learn
in different ways, and sometimes a visual is helpful
in understanding definitions.**

        Q.    But why this specific graphic?

        I'm trying to under what the purpose of its
inclusion in this guidance document is.

        **A.    I can't recall the discussions around
selecting this, but, again, having that visual
support is often helpful for people.**

        Q.    So as the corporate designee of the

CONFIDENTIAL

Demers, Bethany                                              August 21, 2025

66

School Board and on behalf of the School Board, this is to provide visual instruction.  Correct?

    A.    That aligns with the definitions that were provided.

    Q.    Okay.  If you turn to page 9, please, Names and Pronouns:  "Students who identify as gender expansive or transgender could be called by their chosen name and pronouns regardless of the name and gender recorded in the student's permanent pupil record."

    Did I read that correctly?

    A.    You did.

    Q.    And how would a student change their pronoun?  Strike that.

    What are some examples of pronouns that would be considered gender expansive?

    MR. SULLIVAN:  Objection to form, outside the scope.  She can answer in her personal capacity.

    THE WITNESS:  I can't speak for all of the pronouns that might be used by a gender expansive individual.

BY MR. PRIOR:

CONFIDENTIAL

Demers, Bethany                                          August 21, 2025

67

Q.    So the School Board doesn't have a list listed anywhere on its website or any public document on pronouns that would be considered gender expansive?

MR. SULLIVAN:  Same objection.

THE WITNESS:  I can't fully recall if that exists.

BY MR. PRIOR:

Q.    How does a student go about informing -- or strike that.

How does a student go about changing the pronoun that they'll be referred to in school?

**A.    It looks different for different students.  What do you mean by "changing"?**

Q.    Well, that's a good question.  Is there a form that a student would fill out to indicate what pronouns they want to be referred to?

**A.    Potentially, but there's not any kind of required form that would be used by the school division.**

Q.    Does the school accept any pronoun that the student asked to be referred to as?

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

68

MR. SULLIVAN:  Objection to form.

THE WITNESS:  Could you clarify?

BY MR. PRIOR:

Q.    Sure.  Is there any limitation as to the pronouns a student could choose to be identified by while at school?

MR. SULLIVAN:  Same objection, outside the scope of the designee topics.

You can answer in your personal capacity.

THE WITNESS:  I think that -- I don't -- I can't speak for every school.  We look at students on an individual basis and would have an individual conversation with that student.

BY MR. PRIOR:

Q.    Okay.  And how -- can you describe what that process is like?

**A.    So I would refer you to the regulation outlines and the guidance document.  Both reference a student support plan, and that would be offered to a student to have conversations about that.**

Q.    Is that required?  Is a written support plan required when a student indicates that they want

Henderson Legal Services

202-220-4158                    www.hendersonlegalservices.com

CONFIDENTIAL

Demers, Bethany                                August 21, 2025

69

to be referred to by different pronouns?

A.    It's not required, but it's an option.

Q.    And what about when the student wants to use a restroom that does not correspond with their biological sex; is that something that would have to put in a gender support plan or can it just be verbal?

MR. SULLIVAN:  Objection to form.

THE WITNESS:  Can you clarify?

BY MR. PRIOR:

Q.    Sure.  What steps does a student have to take in order be able to use the restroom that does not match their biological sex?

MR. SULLIVAN:  Objection to form.

THE WITNESS:  Are you -- can you clarify "any"?

BY MR. PRIOR:

Q.    What about it is confusing?

A.    Any student.

Q.    A student.  What is the process?

MR. SULLIVAN:  Objection.

BY MR. PRIOR:

CONFIDENTIAL

Demers, Bethany                                        August 21, 2025

70

Q.    Is there one?

**A.    We don't monitor like which restroom every student goes into.  The student leaves class.  They go to the restroom.  So we don't monitor and wouldn't be able to intervene every single time unless we're made aware.**

Q.    So does a student that is using -- that is a biological male that's using a male restroom and decides for -- and that student is socially transitioning to the female.  Does he need to approach anyone at FCPS in order to use the female restroom?

**A.    When a school staff member is made aware of a student who is transitioning by observing, seeing the student, talking to the student, talking to the caregiver, a student support conversation is initiated to discuss that plan.**

Q.    But that staff member would have to be made aware.  Correct?

**A.    Of?  Can you repeat what they would be made aware of?**

Q.    Sure.  I think when you said when a

CONFIDENTIAL

Demers, Bethany                                August 21, 2025

71

staff member is made aware of the student

transitioning that they will take certain steps.

Correct?

        **A.      Um-hum.**

        Q.    What I'm trying to get at is is there

anything that would prohibit a student who's

transitioning from using the restroom that does not

match biological sex without approaching staff?

        MR. SULLIVAN:  Objection to form.

        THE WITNESS:  Can you repeat one more time?

BY MR. PRIOR:

        Q.    Sure.  Does a student who is

transitioning need to inform staff that he will be

using the female restroom if he is transitioning?

        MR. SULLIVAN:  Objection to form.

        THE WITNESS:  So I still answer?  Sorry.

BY MR. PRIOR:

        Q.    Yes.

        **A.      Yes.  They don't need to inform and when

we are made aware, we would have that conversation

with that student and that, in itself, isn't going

to -- that's all.**

CONFIDENTIAL

Demers, Bethany                                                    August 21, 2025

72

Q.   Okay.  And per the regulation, when a school is made aware that a student is using the bathroom that does not match their biological sex, is the school required to inform the parents of that student?

MR. SULLIVAN:  Objection to form, objection to scope.

You can answer in your personal capacity.

THE WITNESS:  I didn't prepare to come and talk about all of the parent involvement components and the school is not required to notify parents just for using the restroom.

BY MR. PRIOR:

Q.   Okay.  Just to be clear, on three of the topics, it says what steps Respondent takes when students request the ability to use restrooms or be referred to with names/pronouns that correspond to their gender identity.

So I just want to restate that.  So I'm really trying to get the steps that are required.

MR. SULLIVAN:  Is that a question?

MR. PRIOR:  No.  I'm just letting you know

CONFIDENTIAL

Demers, Bethany                                      August 21, 2025

73

that that's a topic.  So these are steps.  I'm asking about steps.

         MR. SULLIVAN:  Oh.  The record will show what your question was and what the objection was.

         MR. PRIOR:  Sure.

BY MR. PRIOR:

         Q.   So if you turn to page 10 --

         MR. SULLIVAN:  Which document?

         MR. PRIOR:  The guidance.

         MR. SULLIVAN:  Okay.  That's Exhibit 3 for the record.

BY MR. PRIOR:

         Q.   Do you see where it says:  "Please note that the name in the database is part of an official educational record is, therefore, covered by the Family Educational Rights and Privacy Act, FERPA."

         Did I read that correct?

         **A.   You did.**

         Q.   And it goes on to says:  "Meaning that if the parent or guardian requests access to see their student records, they will have access to the student's chosen name and legal name."

Henderson Legal Services

202-220-4158                    www.hendersonlegalservices.com

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

74

Correct?

A.    **Correct.**

Q.    And then it says:  "If a student transitioning at school is not ready to share with their family about their transgender status, this should be respected."

Correct?

A.    **Correct.**

Q.    "In this scenario, the school staff should make a change socially, calling the student by the chosen name while their official SIS information remains the same."

Correct?

A.    **It says that and every effort will be made to work with the student to involve their caregivers.**

Q.    Sure.  What is the SIS information? What does that mean?

A.    **Student Information System.**

Q.    Okay.  Do you know how this section where it talks about legal name on records -- was this something that was prepared internally by FCPS

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

75

staff and put in the guidance like -- so as opposed to, for example, the definitions where it says terms and definitions developed from and it cites these two outside websites.  Right?

What I'm trying to figure out is this section, for example, Legal Name on Records, is not something that came from an outside website.  Was this developed by Fairfax County Public Schools as part of the guidance document?

**A.     We likely used other like resources in developing that and our team, yes, created this.**

Q.    Okay.  What does this mean, in this scenario, school staff should make a change socially, calling the student by the chosen name while their SIS information remains the same?

What does that mean?  Why does it say that?

**A.     That indicates the student did not make a request for their chosen name to be input into the Student Information System.**

Q.    Okay.  What does that have to do with sharing with their family?

Right?  Because it's says if a student

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

76

transition at school is not ready to share with their family about their transgender status, this should be respected.  So how is it -- I'm just trying to understand why is that scenario then presents itself?

A.    **The tab in SIS that has demographic information feeds into all other documents that are produced by that, that platform, and so it would the student's chosen name on all documents.**

Q.    Those documents that the parents have?

A.    **Yes.**

Q.    How are they given to the parents?

A.    **It depends on the record.**

Q.    Okay.  It says here Family Educational Rights and Privacy Act.  Is that because they have a right to those records, that if was in those records, then it would be produced to the parents and, therefore, that wouldn't be respecting their status?

MR. SULLIVAN:  I'm going to object to form.

THE WITNESS:  Restate the question.

BY MR. PRIOR:

Q.    Yeah.  The documents -- all right.  So the chosen name is entered into SIS.  Correct?

CONFIDENTIAL

Demers, Bethany                                      August 21, 2025

77

**A.    If the student wants.**

Q.    If the student chooses to.

Does that information automatically go to the parents or do they have to request it, what's in SIS?

**A.    Every document or digital platform -- not every.  Most documents or digital platforms feed from the Student Information System.  So anything that the parent would access that is from the student information system, they have something called Parent View.  They would see the information entered there.**

Q.    And if I'm understanding this guidance document correctly, they have a right pursuant to FERPA to access those documents in the SIS?

MR. SULLIVAN:  Objection to form, calls for a legal conclusion.

THE WITNESS:  Can you clarify the question?

BY MR. PRIOR:

Q.    Sure.  It says here that the name in the database, and by database, do we mean the SIS?

**A.    Yes.**

Q.    Correct?  And that name, according to the guidance document, is part of an official

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

78

educational record.  Correct?

        MR. SULLIVAN:  Objection to form, calls for a legal conclusion.

BY MR. PRIOR:

        Q.    Well, that's what it says right here. Correct?

        **A.    I'd need to -- can you show me where you are?**

        Q.    Sure.  It says:  "Please note that the name in the database is part of an official educational record."

        Correct?

        **A.    Yes.**

        Q.    And then it goes on to say:  "And, therefore, covered by the Family Educational Rights and Privacy Act?

        **A.    Yes.**

        Q.    All right.  So is it the School Board's position that the name in the SIS database is part of an official educational record and is, therefore, covered by the Family Education Rights and Privacy Act?

CONFIDENTIAL

Demers, Bethany                                        August 21, 2025

79

MR. SULLIVAN:  Object to the form, object to this being outside the scope of the examination.

If you know the answer, you can answer in your personal capacity.

THE WITNESS:  I can't speak to --

MR. PRIOR:  No.  She's here as a corporate designee.  So if she can't answer as a corporate designee, she doesn't -- she can say that she can't answer.

MR. SULLIVAN:  Well, the objection is that your question is outside the scope of the topic of a topic for which the School Board is presenting testimony and, therefore, if she knows the answer to your question which is not about -- which is going way outside of the scope of a guidance, she can. We're going to allow that to happen, but that is not corporate designee testimony.

MR. PRIOR:  I disagree.  It says the guidance document on Regulation 2603.

MR. SULLIVAN:  And it also says at the top Fairfax County Public Schools, and that doesn't mean you get to ask any question about the Fairfax County

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

80

Public Schools because it's in this guidance

document.

        MR. PRIOR:  I'm literally about what's

written in the guidance document.

        MR. SULLIVAN:  We've stated our objection.  I

believe the question is getting into the operation of

a database and other things are outside the scope of

the topics that have been noted.  I think the witness

can answer if she's able to her personal capacity.

        THE WITNESS:  I cannot speak to all FERPA

requirements.  I can speak to the fact that if it is

entered in the Student Information System that

parents have access to it.

        MR. PRIOR:  Okay.

                        [Demers Exhibit No. 6 was

                        marked for identification.]

        MR. PRIOR:  I'm going to hand what's marked

as Exhibit 6.  Take a second.  There's a couple of

pages.

        [Witness peruses exhibit.]

        THE WITNESS:  Okay.

BY MR. PRIOR:

CONFIDENTIAL

Demers, Bethany                                        August 21, 2025

81

Q.    Just for the record, this Exhibit 6 is Bates stamped FCSB-035606.

Can you tell me what this document consists of?

A.    It is an email between myself and Nancy Tyler.

Q.    Who is Nancy Tyler?

A.    She's the coordinator -- was the coordinator for document management for Fairfax County Public Schools.

Q.    Okay.  And she emails you on Monday, November 23, 2020 at 3:53 p.m.  Correct?

A.    Yes.

Q.    What, generally, is the subject matter of her email here?

A.    We were communicating about record storage and management.

Q.    Okay.  And she asked -- strike that.

She states in paragraph 2 of her email: "Whenever a student enters FCPS and reveals that they're gender expansive or transgender, a team of FCPS staff will be created which will include the

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

82

parent and student as well as a representative if the student requests it and a series of events will occur."

It says that there.  Correct?

**A.    Yes.**

Q.    And then she has a few questions about that.

**A.    Yes.**

Q.    And this Question 1 is:  "Will a copy of the created plan be in the records?"

Correct?

**A.    Yes.**

Q.    Okay.  And do you see her email here back on November 23rd at 4:15 p.m.?

**A.    I do.**

Q.    Okay.  And do you answer her question, will a copy of the created plan be in the records, with:  "No.  This record is optional for a variety of reasons.  The biggest reason this is optional is that it may unintentionally out the student to the parents.  For example, if the student is not out to their parent and the parent conducted a FERPA

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

83

request, this would need to be included which would then out the student.  This document, if completed, would be kept in the counselor's records."

I read that correctly.  Right?

**A.    Which is a part of the cumulative file.**

Q.    Okay.  And are these the steps that Fairfax County Public Schools take when they are alerted about a student's transgender or gender expansive status?

MR. SULLIVAN:  Objection to form.

BY MR. PRIOR:

Q.    What's said here, is that still the case?

MR. SULLIVAN:  Same objection.

THE WITNESS:  This is an email.  This isn't the practice.  This is as we were working out some of the procedures.

BY MR. PRIOR:

Q.    Okay.

**A.    And so no.**

Q.    Is the practice different than that email?

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

84

A.    What part?

MR. SULLIVAN:  Objection to scope of the time frame.

BY MR. PRIOR:

Q.    Fine.  Was the practice different between the 2022-2023 school year and 2023-2024?

A.    Can you clarify which practice?

Q.    The practice of only including the plan for a transgender or gender expansive student in the records if their parents are aware of their status?

MR. SULLIVAN:  Objection to form.

THE WITNESS:  So objection.  Sorry.  So I'm answering on behalf of me?

MR. SULLIVAN:  If you understand the question, I think this is within the scope for you to answer.

THE WITNESS:  Okay.  I do understand the scope of the question, and I think there's some confusion about how this is being interpreted.

So if a support plan is documented, that is part of the cumulative record and the parent would get a copy -- would be able to access a copy of that.

CONFIDENTIAL

Demers, Bethany                                    August 21, 2025

85

If a formalized written plan is not developed, then there is not a document that would outline that.

BY MR. PRIOR:

Q.    Okay.

**A.    So there's nothing to provide.**

Q.    Got it.  Could you turn to page 13, please of the Exhibit 3.

Do you see the FAQ section?

**A.    Yes.**

Q.    Were those FAQs developed internally at Fairfax County Public Schools or are they taken from another source?

**A.    We likely referenced other sources, but developed internally.**

Q.    Okay.  And it says -- does it say what name or pronoun should I use to address the student, question mark?

**A.    It does say that.**

Q.    Then it says:  "Students who identify as gender expansive or transgender should be addressed by their chosen name and gender pronouns regardless of the name and gender recorded in the student's