# Exhibit L

CONFIDENTIAL

Gros, Penny                                           August 21, 2025

1

*** C O N F I D E N T I A L ***

VIRGINIA:

        IN THE CIRCUIT COURT OF FAIRFAX COUNTY

-------------------------------------
                                    :
JANE DOE,                           :
                                    :
        Petitioner,                 :
                                    :
    v.                              :   Case No.
                                    :
FAIRFAX COUNTY SCHOOL BOARD,        :   CL24-3171
                                    :
        Respondent.                 :
                                    :
-------------------------------------

        The deposition of PENNY GROS, a witness

herein, held at Dunlap, Bennett & Ludwig, PLLC,

convened at 9:03 a.m. Eastern Daylight Time, on

Thursday, August 21, 2025 and the proceedings being

taken down by stenotype and transcribed by Catherine

B. Crump, a Notary Public in and for the Commonwealth

of Virginia.

CONFIDENTIAL

Gros, Penny                                                    August 21, 2025

2

APPEARANCES:

On behalf of the Petitioner:

    ANDREW J. BLOCK, ESQ.

    IAN D. PRIOR, ESQ.

    NICHOLAS BARRY, ESQ.

    America First Legal Foundation

    611 Pennsylvania Avenue, S.E., Suite 231

    Washington, D.C.  20003

    (202) 836-7958

    andrew.block@aflegal.org

    ian.prior@aflegal.org


On behalf of the Respondents:

    NOAH P. SULLIVAN, ESQ.

    Gentry Locke Attorneys

    919 E. Main Street, Suite 1130

    Richmond, Virginia  23219

    (804) 956-2062

    nsullivan@gentrylocke.com

CONFIDENTIAL

Gros, Penny                                          August 21, 2025

3

APPEARANCES (Continued):

On behalf of the Respondent:

    SONA REWARI, ESQ.

    Hunton, Andrews, Kurth, LLP

    2200 Pennsylvania Avenue, N.W.

    Washington, D.C.  20037

    (202) 955-1974

    srewari@hunton.com


    VIDEOGRAPHER:  JON RASSON

CONFIDENTIAL

Gros, Penny                                          August 21, 2025

4

                              I N D E X

WITNESS:  Penny Gros

EXAMINATION                                    PAGE

   By Mr. Block:                                6


EXHIBIT NO.              DESCRIPTION              IDENTIFIED

1  - Regulation 2603.2                                35

2  - Regulation 2603, Gender Expansive and

     Transgender Students Guidance Document      58

3  - Student Rights & Responsibilities Handbook   64

4  - FCSB_051325, Email Chain                     73

5  - FCSB_051061, Email Chain                     83

6  - FCSB_051061, Email Chain                     87

7  - FCSB_004260, Email Chain                     91

8  - Presentation Slide:  Legal Name and Chosen

     Name                                         99

9  - Training Presentation Slide                 104

10 - Training Presentation Slide                 107

11 - FCSB-037504, April 13, 2021 Email to

     Deborah Scott                               111

12 - Diagram, West Springfield High School       127

CONFIDENTIAL

Gros, Penny                                            August 21, 2025

75

email chain.

BY MR. BLOCK:

Q.    Do you know who Ben Fiacco is?

**A.    He was an assistant principal at West Springfield High School when I was the region assistant superintendent.**

Q.    Okay.  And David Jagels?

**A.    He was an executive principal in Region 4.**

Q.    And Kay Rizzuto?

**A.    An assistant principal at West Springfield High School.**

Q.    And then Tara Petrovic?

**A.    Was the executive administrative assistant for Region 4 at that time.**

Q.    And so were these people you worked with somewhat regularly?

**A.    Mr. Jagels and Ms. Petrovic, yes.  The assistant principals, not on a daily basis or weekly basis even sometimes.**

Q.    So the underlying email here appears to be a parent raising a concern to Mr. Mukai, and was

CONFIDENTIAL

Gros, Penny                                        August 21, 2025

76

Mr. Mukai at the time the principal of West                01:36
Springfield High School?                                   01:36

    **A.    Yes.**                                     01:36

    Q.    So this appears to a parent raising         01:36
concerns to Mr. Mukai about -- and I'm quoting from        01:36
the second page here:  "I'm concerned that students        01:36
are permitted to use both bathrooms interchangeably        01:37
throughout the day without boundaries, and if this is      01:37
normalized and accepted, then I suppose other              01:37
students will engage in the same behavior."                01:37

    Do you see that?                                       01:37

    **A.    You're on page 2?**                          01:37

    Q.    Towards the bottom of page 2, the last       01:37
full paragraph that appears on that page.                  01:37

    **A.    Okay.  Yes.  I see it.**                     01:37

    Q.    Okay.  So you seem to be kind of, say,       01:37
copied onto this at the point where Mr. Mukai is           01:37
raising this to Mr. Jagels, Ms. Rizzuto, and               01:37
Ms. Petrovic; is that right?                               01:37

    **A.    Yes, although, again, these subsequent**     01:37
**pages do not seem familiar to me, but I'm assuming,**    01:37
**since this is all stapled together, that I have to**     01:37

CONFIDENTIAL

Gros, Penny                                    August 21, 2025

77

accept that this was all forwarded to me, but I see the first page is the conversation that I had with the principal.  I don't recall all of these forwarded things.

Q.   So you recall seeing Mr. Mukai asking you "May I verify FCPS and the policy on informing parents on pronouns and nicknames"?

A.   Yes.

Q.   So you sent him back, it looks like, a link; is that right?

A.   Um-hum.

Q.   And am I -- do you know what that link led to?

A.   I mean, it says at the end there 2603. So it goes back to that regulation that you gave me.

Q.   Back to that regulation which we have here as Exhibit 1, I believe?

A.   Yes.

Q.   Okay.  And so why did you send him that regulation?

A.   Because that regulation contains the pronoun use and nicknames policy or guidance.

CONFIDENTIAL

Gros, Penny                                          August 21, 2025

78

Q.   So he responded that he read the regulation.  Right?

**A.   Um-hum.**

Q.   And he said he was unclear if the student choosing a different pronoun is -- or name is parent notification.  What did you understand that to mean?

**A.   I understood that to mean whether the school needed to notify the parent if the student chose a different name or pronouns.**

Q.   Okay.  And why wouldn't the school want to notify the parent?

MR. SULLIVAN:  Objection to form, calls for speculation.

THE WITNESS:  I don't think it's about "want to".  I think Principal Mukai was looking to better understand the regulation and his responsibilities.

BY MR. BLOCK:

Q.   Okay.  And your understanding is that Regulation 2603 governed his responsibility in this situation?

MR. SULLIVAN:  Objection to form.

CONFIDENTIAL

Gros, Penny                                      August 21, 2025

79

THE WITNESS:  Yes.  The 2603 would provide the answer to that.

BY MR. BLOCK:

Q.    Okay.  And he said he read it, but was unclear?

**A.    Um-hum.**

Q.    Is that a yes?

**A.    Yes.  Sorry.**

Q.    And so what does it mean that a student is choosing a different pronoun or name?

MR. SULLIVAN:  Objection to form.

THE WITNESS:  We covered this earlier, but when the teacher goes over the roster, the student says I would like to be called Joe and maybe provides information related to their pronouns either privately or at that time.

BY MR. BLOCK:

Q.    So do you think that this was a case where Mr. Mukai, as a high school principal, was asking you as an assistant region superintendent -- or region assistant superintendent, the teacher or parent was upset that somebody was going from Joseph

CONFIDENTIAL

Gros, Penny                                        August 21, 2025

80

to Joe; do you think that that's what he was asking    01:40

you about here?                                        01:40

    MR. SULLIVAN:  Objection to form.       01:40

    THE WITNESS:  I believe based on this email    01:40

chain I just looked through, he was trying to answer   01:41

a question that a parent had asked him and not based   01:41

on an actual incident, as a matter of record.          01:41

BY MR. BLOCK:                                          01:41

    Q.   I guess what are the -- what is your    01:41

understanding of parent notification here?  Are there  01:41

instances where a student would be called something    01:41

in school and a parent wouldn't be notified?           01:41

    MR. SULLIVAN:  Objection to form, calls for   01:41

speculation, lacks foundation.                         01:41

    THE WITNESS:  I would imagine that there are   01:41

students that ask to be called something and no one    01:41

is calling home to say, Hey, by the way, today your    01:41

child asked me to call them something different.       01:41

BY MR. BLOCK:                                          01:41

    Q.   Right, but it says "choosing a different  01:41

name or is parent notification".  I guess how did you  01:41

understand that question when he asked it?             01:41

CONFIDENTIAL

Gros, Penny                                        August 21, 2025

81

**A.   I understood.**                                    01:41

MR. SULLIVAN:  Objection to form.                          01:42

THE WITNESS:  -- that he wanted to answer                  01:42
this question that was posed to him by a parent, not       01:42
based on an actual scenario.                               01:42

BY MR. BLOCK:                                              01:42

Q.   Okay.  So when you responded saying "I                01:42
think it's case-by-case basis", what does that mean?       01:42

**A.   Meaning that it would depend on the                  01:42
particular child, the particular circumstances.  I         01:42
went on to mention to him that in every situation I        01:42
dealt with as a principal, it was always the parent        01:42
asking, the parent meeting with us.  It wasn't the         01:42
child by themselves asking something.**                     01:42

Q.   But that does -- does that mean that                  01:42
there could be an instance where the child was asking      01:42
something and that the school would accommodate that?      01:42

MR. SULLIVAN:  Objection to form.                          01:42

THE WITNESS:  Again, you're asking if there's              01:42
ever a scenario where a child could ask to be called       01:42
something --                                               01:43

BY MR. BLOCK:                                              01:43

CONFIDENTIAL

Gros, Penny                                    August 21, 2025

82

Q.    Right.

**A.    -- that the parent is not --**

Q.    Privy to.

**A.    Yeah.  I don't know.**

Q.    So then when she responded to your email, he said:  "The gender pronoun on the student information form, are we to inform the parents?"

Do you see that?

**A.    I do.**

Q.    Okay.  Did you ever respond to that email?

**A.    Well, I imagine if it's not here and you don't have it, I didn't.**

Q.    Well, that's what I'm asking.  Do you remember responding to this email?

**A.    No, I do not.  Like I said, I can remember generally this back and forth.  I don't remember a four-page forward and I don't remember where the conversation went from here, because I am not even aware of the student information form.  What form?**

Q.    Okay.  So you don't remember how -- or

CONFIDENTIAL

Gros, Penny                                              August 21, 2025

83

do you remember how this issue resolved in August or    01:44
maybe early September of 2023?    01:44

**A.    I don't remember how it was resolved and**    01:44
**I may -- I mean, just looking at this, if you don't**    01:44
**have another email, I may have called him, because**    01:44
**this is not clear as it's written.**    01:44

**[Gros Exhibit No. 5 was**    01:44
**marked for identification.]**    01:44

BY MR. BLOCK:    01:44

Q.    I'm handing the witness what's been    01:44
marked as Exhibit 5, which is a document Bates    01:45
stamped FCSB-051061.  Ms. Gros, I've handed you    01:45
another email chain from October 2021.    01:45

Who is Deborah Scott?    01:45

**A.    I don't recall her position, but she**    01:45
**works for -- worked for FCPS.**    01:45

Q.    Was she in the district central offices    01:45
or do you know if she was in a school?    01:45

**A.    She was at Central Office.**    01:45

Q.    Okay.  And do you remember who Lisa    01:45
Reddel is, if I'm pronouncing that correctly?    01:45

**A.    She was an executive principal in Region**    01:45

Gros, Penny                                    August 21, 2025

84

**4.**

Q.    Okay.  And Mr. Jagels, again, is?

**A.    Executive principal, Region 4.  Was.**

Q.    Was, okay.

So this email, do you recall this situation?

**A.    I do not.**

Q.    You do not?

**A.    I do not.**

Q.    Does reading this email jog your memory at all?

**A.    Not about this specific -- I mean, I can remember reaching out to Deb Scott.  She would have been the person to go to for this type of concern, but I don't remember this parent, how this got resolved, what any next step was from it.**

Q.    Okay.  So the situation here -- right -- which there's an email from you to Deb that you sent her and you copied into the text of this, it looks like, an email from somebody else --

**A.    Sure.**

Q.    -- or the text -- okay.

And it begins with:  "Why is my daughter being

Gros, Penny                                            August 21, 2025

85

called by another name in school that's not on her      01:47

birth certificate."      01:47

        Is that right?      01:47

        **A.    Yes.**      01:47

        Q.    "My wife and I never gave the school      01:47

authority to do so."      01:47

        Is that right?      01:47

        **A.    Yes.**      01:47

        Q.    So do you see down towards the bottom of      01:47

this email where it says:  "My religion forbids this      01:47

and I will not accept it."      01:47

        **A.    I do see that.**      01:47

        Q.    And so it looks here that you were      01:47

sending an email to Deb looking for some potential      01:47

guidance on this situation?      01:47

        **A.    Yes.**      01:47

        MR. SULLIVAN:  Objection to form.      01:47

BY MR. BLOCK:      01:47

        Q.    You answered yes to that last question?      01:47

        **A.    Yes.**      01:47

        Q.    Does that refresh your memory on who Deb      01:47

might have been?      01:47

CONFIDENTIAL

Gros, Penny                                    August 21, 2025

104

Q.    Do you understand why there might be two 02:19
options? 02:19

A.    I do not. 02:19

Q.    But it is clear that students can have a 02:19
different name that's not reflected in the SIS? 02:19

**A.    Students can use a different name that's** 02:19
**not reflected in the SIS.** 02:19

Q.    Okay.  And who would be expected to call 02:19
the students that name?  Do you know? 02:19

**A.    I do not.  I mean, based on looking at** 02:19
**this, the other thing I'm not aware of is that** 02:19
**teachers don't see everything that administrators see** 02:19
**in SIS.  So there are different views.** 02:19

**So I don't know who this is directed to and** 02:19
**what these options are in terms of, you know, it's** 02:19
**been so long since I've been in a school.  I don't** 02:19
**know what these fields look like and what a teacher** 02:19
**could see versus what an administrator could see, and** 02:19
**who these two options are even been being presented** 02:20
**to, I don't know.** 02:20

**[Gros Exhibit No. 9 was** 02:20
**marked for identification.]** 02:20

CONFIDENTIAL

Gros, Penny                                                    August 21, 2025

105

BY MR. BLOCK:                                                      02:20

Q.    I'm handing the witness what's been                          02:20

marked as Exhibit 9, which is a screen shot of an                  02:20

image from the same record previously identified.                  02:20

Ms. Gros, do you see --                                            02:20

MR. SULLIVAN:  Sorry.  What's the Bates                            02:20

number on this for the record?                                     02:20

MR. BLOCK:  The Bates number is still                              02:20

0004163.                                                           02:20

MR. SULLIVAN:  I'm just going to state a                           02:20

continuing objection to an incomplete document.                    02:20

MR. BLOCK:  I will note that counsel, your                         02:20

counsel, presented this to our witnesses.  So I think              02:20

those objections --                                                02:20

MR. SULLIVAN:  I'm just preserving an                              02:20

objection.                                                         02:21

BY MR. BLOCK:                                                      02:21

Q.    Okay.  Ms. Gros, when you were doing                         02:21

these trainings, these more than teens, maybe                      02:21

twenties of trainings each year, was it common to                  02:21

have questions presented to continue to the next                   02:21

slide?                                                             02:21

CONFIDENTIAL

Gros, Penny                                    August 21, 2025

106

**A.    Most trainings had some sort of like mastery quiz that went along and we were doing these trainings by ourselves, just on the computer.**    02:21

Q.    Do you recall having to do this one about supporting gender and transgender youth yourself?    02:21

**A.    Vaguely.**    02:21

Q.    Reading this question here -- "As a result of the new regulation, supporting gender expansive and transgender youth, student can do the following.  Check all that apply" -- do you know what the correct answers to this are?    02:21

**A.    It would only be a guess and I think that all of them would get checked.**    02:21

Q.    Okay.    02:21

**A.    Well, actually, let me take that back, because I think the first two are in conflict with each other.  So maybe the middle one didn't get checked.**    02:22

Q.    And the middle one is change their name on --    02:22

**A.    Legal documentation.**    02:22

CONFIDENTIAL

Gros, Penny                                   August 21, 2025

107

Q.    With legal documentation, okay.

[Gros Exhibit No. 10 was marked for identification.]

BY MR. BLOCK:

Q.    You probably knew where this was going, but Exhibit 10 is an exhibit from the same Bates number as eight and nine and, Ms. Gros, congratulations.  You are correct.  The middle line did not apply.

MR. SULLIVAN:  I'll restate that objection on the form to the incomplete document.

BY MR. BLOCK:

Q.    Okay.  Do you see how this says: "Correct.  Students can change their name and gender without permission of legal documentation."

A.    Yes.

Q.    And then it continues to state:  "It is important to remember that students will be provided with assistance in making these changes throughout their student support team meetings."

A.    Yes.

Q.    What are student support team meetings?

CONFIDENTIAL

Gros, Penny                                      August 21, 2025

108

**A.    So I only know in general about it, because it didn't necessarily exist that way when I was a principal, but I think the idea is that counselor, maybe an administrator, a social worker, a school psychologist, could be part of a team supporting a student who comes forward for support or who parent comes forward for support.**

Q.    Okay.  But they don't need legal documentation to change their name in the SIS?

**A.    That's what it says here and I don't know that that was always the case, but these documents say that.**

Q.    We talked earlier about gender identity and gender expansive students.  Right?

**A.    Yes.**

Q.    In particular, with respect to their use of restroom and locker facilities in the school?

**A.    Yes.**

Q.    Is it your understanding that -- well, can you tell me about your understanding of how a student who wishes to use the bathroom or locker room of the opposite sex goes about getting that

CONFIDENTIAL

Gros, Penny                                                    August 21, 2025

109

accommodation?

**A.    I actually don't know the answer for certain.  It would be speculation.**

Q.    Okay.  So -- but the school has a policy, 2603?

**A.    Yes.**

Q.    And that says that gender expansive students can use the restroom or locker room of their gender identity.  Right?

**A.    Yes.  As a school administrator, a principal, an assistant principal, people who are enforcing the rules of the schools, how do they know if somebody is allowed to use a different restroom.**

MR. SULLIVAN:  Objection to form, calls for speculation, lacks foundation.

THE WITNESS:  Again, it would be speculation, but that they would know that student.  Assistant principals are assigned to an alpha or a roster of students.  Counselors are as well, and they would be familiar with students that are in their sub-school or subset of students.

BY MR. BLOCK:

CONFIDENTIAL

Gros, Penny                                    August 21, 2025

110

Q.    And so then if there is a student who's getting -- who's being allowed to do this, is that something that they have to do continuously?

MR. SULLIVAN:  Objection to form, vague and ambiguous.

THE WITNESS:  My understanding of the regulation is that it would not change from day to day.

BY MR. BLOCK:

Q.    So as an assistant superintendent, you would expect that once that change is made that that would be the course that that student would continue to follow?

**A.    Unless there was some meeting or discussion about what's going on.**

Q.    Okay.  Unless it changed course, basically?

**A.    Yes.**

Q.    You wouldn't expect to see that student interchangeably using different restrooms throughout the day?

**A.    That's correct.**