**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

|  |  |  |
|---|---|---|
| STEPHANIE LUNDQUIST-ARORA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-01768-PTG-IDD |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(1) & (6)**

Sona Rewari (VSB No. 47327)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1974
Facsimile: (703) 918-4018
srewari@hunton.com

J. Pierce Lamberson (VSB No. 93616)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Telephone:  (804) 787-8039
Facsimile:  (804) 788-8218
plamberson@hunton.com

*Counsel for Defendants*
*Fairfax County School Board*
*and Dr. Michelle C. Reid*

# TABLE OF CONTENTS

TABLE OF AUTHORITES .............................................................................................................. iii

INTRODUCTION ....................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

    I.     FCPS Revises its Regulation Concerning Gender-Expansive and Transgender Students. ................................................................................................................... 2

    II.    Regulation 2603.3 Differs Materially from Regulation 2603.2 in Its Parental Participation and Documentation Requirements. ................................................... 3

    III.   Lundquist-Arora and AFL Admit They Do Not Know How Regulation 2603.3 Will Be Applied, But File a Pre-Enforcement Challenge Anyway. ...................... 5

    IV.   Lundquist-Arora Alleges Injury Based on a Highly Speculative and Unlikely Chain of Events. .................................................................................................. 6

STANDARDS OF REVIEW ........................................................................................................ 9

ARGUMENT ............................................................................................................................... 10

    I.     Lundquist-Arora Lacks Standing. ....................................................................... 10

         A.    Lundquist-Arora Fails to Allege a Cognizable Injury-in-Fact. ................. 10

         B.    Lundquist-Arora's Theory of Standing Contravenes Supreme Court Jurisprudence. ...................................................................................... 13

    II.    Lundquist-Arora Fails to Allege a Ripe Controversy. .......................................... 18

    III.   Lundquist-Arora Fails to State a Claim for a Violation of Her Free Exercise or Substantive Due Process Rights. ....................................................................... 20

         A.    Lundquist-Arora Fails to State a Free Exercise Claim. .......................... 20

         B.    Lundquist-Arora Fails to State a Substantive Due Process Claim. ........... 24

         C.    Lundquist-Arora Fails to State Any Claims under the Virginia Constitution. ............................................................................................. 25

    IV.   Lundquist-Arora's Request for Universal Declaratory Relief Fails as a Matter of Law. ...................................................................................................................... 27

    V.    The Official-Capacity Claims against Dr. Reid Should Be Dismissed as Duplicative. ......................................................................................................... 28

CONCLUSION ............................................................................................................. 28

CERTIFICATE OF SERVICE ..................................................................................... 30

**TABLE OF AUTHORITES**

Page(s)

**Cases**

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) ............................................................................................. 19

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
  367 F.3d 212 (4th Cir. 2004) ............................................................................. 10

*Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*,
  1 F.4th 180 (4th Cir. 2021) ................................................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 9

*Blankenship v. Manchin*,
  471 F.3d 523 (4th Cir. 2006) ............................................................................. 23

*Cantwell v. Connecticut*,
  310 U.S. 296 (1940) ............................................................................................. 20

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*,
  508 U.S. 520 (1993) ............................................................................................. 21

*City of Huntington Beach v. Newsom*,
  No. 25-3826, 2025 WL 3169324 (9th Cir. Sept. 12, 2025) ............................ 17, 18

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................. 11

*Diamond Alternative Energy, LLC v. EPA*,
  606 U.S. 100 (2025) ............................................................................................. 15

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ............................................................................................. 28

*Emesowum v. Arlington Cty.*,
  No. 1:20-cv-113, 2020 WL 3050377 (E.D. Va. June 5, 2020) ........................ 28

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*,
  494 U.S. 872 (1990) ......................................................................................... 20, 21

*Esposito v. S.C. Coastal Council*,
  939 F.2d 165 (4th Cir. 1991) ............................................................................... 5

*Evans v. B.F. Perkins Co.*,
  166 F.3d 642 (4th Cir. 1999) ............................................................................... 9

*Heller v. Doe*,
  509 U.S. 312 (1993) ............................................................................................. 21

*Holloway v. City of Virginia Beach,*
  42 F.4th 266 (4th Cir. 2022) ................................................................................. 4

*John & Jane Parents 1 v. Montgomery Cty. Bd. of Educ.,*
  78 F.4th 622 (4th Cir. 2023), *cert. denied*, ___ U.S. ___, 144 S.Ct. 2560 (2024) ............ *passim*

*Kentucky v. Graham,*
  473 U.S. 159 (1985) ......................................................................................... 28

*Kim v. Bd. of Educ. of Howard Cty.,*
  93 F.4th 733 (4th Cir. 2024) ..................................................................... 21, 22, 24

*Love-Lane v. Martin,*
  355 F.3d 766 (4th Cir. 2004) ............................................................................... 28

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) .......................................................................................... 9

*Mahmoud v. Taylor,*
  606 U.S. 522 (2025) ........................................................................................ 22

*Massey v. Ojaniit,*
  759 F.3d 343 (4th Cir. 2014) .............................................................................. 10

*McCleary-Evans v. Md. Dep't of Transp.,*
  780 F.3d 582 (4th Cir. 2015) ............................................................................... 9

*Miller v. Brown,*
  462 F.3d 312 (4th Cir. 2006) .............................................................................. 18

*Mirabelli v. Bonta,*
  607 U.S. 492 (2026) ................................................................................... *passim*

*Mirabelli v. Olson,*
  761 F. Supp. 3d 1317 (S.D. Cal. 2025) .................................................................. 14

*Monell v. N.Y. City Dep't of Soc. Servs.,*
  436 U.S. 658 (1978) ........................................................................................ 28

*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024) ........................................................................................ 27

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
  523 U.S. 726 (1998) ........................................................................................ 19

*Parents Protecting Our Children v. Eau Claire Area Sch. Dist.,*
  95 F.4th 501 (7th Cir. ), *cert. denied*, ___ U.S. ___, 145 S. Ct. 14 (2024) ........................ 15, 16

*Perry v. Marteney,*
  172 F.4th 315 (4th Cir. 2026) ......................................................................... 20, 21

*Philips v. Pitt Cty. Mem'l Hosp.,*
  572 F.3d 176 (4th Cir. 2009) .......................................................................... 2, 10

*Raines v. Byrd,*
  521 U.S. 811 (1997) ........................................................................................ 16

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
945 F.2d 765 (4th Cir. 1991) ............................................................................. 9

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
490 U.S. 477 (1989) ......................................................................................... 18

*Scoggins v. Lee's Crossing Homeowners Ass'n*,
718 F.3d 262 (4th Cir. 2013) ........................................................................... 19

*Shalala v. Illinois Council on Long Term Care, Inc.*,
529 U.S. 1 (2000) ............................................................................................. 16

*Shivaee v. Commonwealth*,
270 Va. 112, 613 S.E.2d 570 (2005) ................................................................ 25

*South Carolina v. United States*,
912 F.3d 720 (4th Cir. 2019) ........................................................................... 18

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ......................................................................................... 10

*Taylor v. Grubbs*,
930 F.3d 611 (4th Cir. 2019) ........................................................................... 16

*Texas v. United States*,
523 U.S. 296 (1998) ......................................................................................... 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ................................................................................... 10, 11

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ......................................................................................... 27

*United States v. Salerno*,
481 U.S. 739 (1987) ......................................................................................... 27

*Veney v. Wyche*,
293 F.3d 726 (4th Cir. 2002) ............................................................... 10, 23, 25

*Virginia Coal. for Immigrant Rts. v. Beals*,
803 F. Supp. 3d 454 (E.D. Va. 2025) ................................................................ 9

*Vlaming v. West Point School Board*,
302 Va. 504, 895 S.E.2d 705 (2023) ................................................................ 26

*Washington State Grange v. Washington State Republican Party*,
552 U.S. 442 (2008) ......................................................................................... 27

*White Tail Park, Inc. v. Stroube*,
413 F.3d 451 (4th Cir. 2005) ............................................................................. 9

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ......................................................................................... 22

*Z.G. v. Pamlico Cty. Pub. Schs. Bd.*,
744 F. App'x 769 (4th Cir. 2018) .................................................................... 28

*Zak v. Chelsea Therapeutics Int'l Ltd.*,
  780 F.3d 597 (4th Cir. 2015) ................................................................................ 10

**Statutes**

Article I, § 11 of the Virginia Constitution............................................................. 25, 26
Va. Code § 22.1-23.3 ................................................................................................. 21

## **INTRODUCTION**

Plaintiff Stephanie Lundquist-Arora challenges a policy that does not say what she alleges and that has never been applied to her. She brings a pre-enforcement facial challenge to Fairfax County Public Schools' ("FCPS") Regulation 2603.3, alleging that it allows school officials to facilitate a student's gender transition at school without parental knowledge or consent. But the regulation says no such thing. Effective July 1, 2026, Regulation 2603.3 *requires* parental participation in the gender support plan process, documentation of accommodations in the support plan, and parental access to that plan. Far from excluding parents from decisions affecting their children, Regulation 2603.3 mandates their involvement.

Lundquist-Arora's lawsuit rests entirely on speculation, not any actual or imminent injury. She worries that "her children, *like all children, may*" someday be influenced by "gender ideology," and fears what FCPS staff might do "*[i]f* any of [her] children *were* to assert a 'gender-expansive' or 'transgender' identity at school." (ECF 1, Compl. ¶¶ 91, 103 (emphases added).) She does not allege that any of her three children is transgender, gender-expansive, or questioning their gender identity; has requested accommodations under Regulation 2603.3; or has ever sought such accommodations under any version of Regulation 2603 during the six years such policies have existed in FCPS. Her asserted injury depends on a chain of hypothetical future events that may never transpire. Such conjectural allegations do not establish the concrete, imminent injury required for Article III standing. And they do not present a ripe controversy suitable for judicial review.

Because Lundquist-Arora cannot demonstrate a justiciable case or controversy, she cannot state any plausible claims for relief. And even if she could overcome those jurisdictional defects, her constitutional claims fail because they are premised on a misreading of Regulation 2603.3 that is belied by its plain text. The Complaint should be dismissed.

1

<u>**STATEMENT OF FACTS**</u>

The facts set forth below are taken from the complaint, matters of public record of which the Court may take judicial notice, and documents specifically cited or referenced in the complaint. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

**I.      FCPS Revises its Regulation Concerning Gender-Expansive and Transgender Students.**

The School Board is the public body with final policymaking authority for FCPS. (ECF 1, Compl. ¶ 37.) Dr. Reid is the Superintendent of FCPS and is sued in her official capacity only. (*Id.* ¶ 12.) The Division Superintendent implements School Board policies, including through the enactment of regulations. (*Id.* ¶ 39.)

In October 2020, FCPS adopted the "first iteration" of Regulation 2603, entitled "Gender-Expansive and Transgender Students." (*Id.* ¶ 41.) This was superseded by Regulation 2603.2, which took effect on April 21, 2022. (*Id.*) Regulation 2603.2 was recently superseded by a new version, Regulation 2603.3, effective July 1, 2026. (*Id.* ¶ 70.)

The change was preceded by a demand and threat of litigation by America First Legal ("AFL"). (*Id.* ¶¶ 65-67.) On April 28, 2026, AFL sent a letter to FCPS asserting that Regulation 2603.2 and an associated "Guidance Document," as "currently drafted and implemented," infringe upon "parents' constitutional rights and violate the Family Educational Rights and Privacy Act" because they "create a framework for affirmatively facilitating social transitions while excluding parents and concealing information." (*Id.* ¶¶ 65-68; Ex. 1, Letter from R. Griffin to M. Reid, at 1, 2.) AFL stated that it represents Lundquist-Arora, whose "three children are enrolled in Fairfax County Public Schools," but the five-page letter did not otherwise discuss her or her children, let alone assert that Regulation 2603.2 or the Guidance Document had been applied to Lundquist-Arora or any of her children. (Ex. 1, Griffin Letter, at 1.) AFL requested that FCPS either rescind

Regulation 2603.2 and the Guidance Document, or establish "a process for exemption" by May 18, 2026 "to avoid litigation." (Compl. ¶ 67; Ex. 1, Griffin Letter, at 5.)  It gave no explanation or rationale for the deadline.

By letter dated May 18, 2026, FCPS advised AFL that (a) it had revised Regulation 2603, (b) new Regulation 2603.3 would be effective July 1, 2026, and (c) it had withdrawn the Guidance Document which was based on the now-superseded Regulation 2603.2.  (Compl. ¶ 69; Ex. 2, Letter from J. Foster to R. Griffin.)  It enclosed a copy of the new Regulation 2603.3.  (*Id.*)

**II.      Regulation 2603.3 Differs Materially from Regulation 2603.2 in Its Parental Participation and Documentation Requirements.**

A redline comparison of Regulation 2603.2 and Regulation 2603.3 is attached as Exhibit 3.  As the comparison shows, Regulation 2603.3 differs from Regulation 2602.2 in its requirements regarding (1) parental participation and (2) documentation of school-provided accommodations. Under Regulation 2603.2, FCPS did not require parental participation before providing accommodations to transgender and gender-expansive students.  (Compl. ¶ 47.)  Under the old regulation, "[w]hen a school [was] made aware of a student's gender-expansive or transgender status," it was required to "offer to convene a support team for the student *or* the parents" which would include the student's parents "if the student [was] willing."  (Ex. 4, Regulation 2603.2, §IV(A) (emphasis added).)  A school could provide accommodations to gender-expansive or transgender students, including access to gender-specific school facilities or use of a different name or gender-markers in non-permanent student records, such as on FCPS electronic systems, internally generated and shared school lists, yearbooks, school newspapers and publications, at the request of a "student *or* parents."  (*Id.*)  And such school-provided accommodations were not required to be documented in a written "support plan."  (*See id.*)

Regulation 2603.3, by contrast, *requires* parental participation on the school support team. (*See* Ex. 5, Regulation 2603.3, § IV(A) & (B).)  While the request for a school support team can be made by either the student or the parent, the support team formed by the school *must* include the student *and* the parent.  (*Id.* § IV(A).)  Both the student *and* the parent are to have "input into the composition of the team and also may invite any representatives of their choosing to include physical and mental health professionals or advocates."  (*Id.*)  Moreover, "[a]ny accommodations for access to gender-specific facilities, overnight trips or events, gender-specific courses, activities, or athletics, and name or gender-marker changes to non-permanent scholastic records *must* be documented in a support plan."  (*Id.* § IV(B) (emphasis added).)

Regulation 2603.3 does not direct schools to provide any accommodations to a minor student over the objection of the student's parents.  (*See generally id.*)  Nor does it direct schools to withhold from parents any information regarding the accommodations being provided to their student by the school.  (*See id*.)  It further ensures parental access to the "support plan" by requiring that the plan be "maintained in a confidential file by the school principal, to be accessible to the members of the support team" and "subject to the same privacy guidelines as are other student records."  (*Id.*, § IV(B).)  Where staff has a concern that a student may be at risk of self-harm or abuse or neglect, Regulation 2603.3 directs staff to follow the procedures in FCPS Regulation 2111, Procedures for Conducting Risk Assessments, and Regulation 2115, Procedures for Reporting Cases of Suspected Child Abuse or Neglect.  (*Id.* § IV(G).)[1]

---

[1] Lundquist-Arora relies extensively on testimony from FCPS staff regarding the now-superseded Regulation 2603.2. (*See* Compl. ¶¶ 43-54.)  But the superseded regulation and rescinded guidance differ materially from Regulation 2603.3 on the very aspects at issue in this case.  The viability of Lundquist-Arora's claims must be judged against the current policy, Regulation 2603.3. *See Holloway v. City of Virginia Beach*, 42 F.4th 266, 273 (4th Cir. 2022) ("[W]hen a challenged law is 'superseded by a significantly amended statutory scheme,' then a

4

**III.    Lundquist-Arora and AFL Admit They Do Not Know How Regulation 2603.3 Will Be Applied, But File a Pre-Enforcement Challenge Anyway.**

Eight days after FCPS's letter regarding new Regulation 2603.3, AFL replied, asserting that the changes to Regulation 2603 and withdrawal of the Guidance Document "do not remedy the underlying constitutional violations." (Compl. ¶ 70; Ex. 6, Letter from R. Griffin to J. Foster, at 1.) This letter, too, made no factual assertions about any historical or anticipated future application of Regulation 2603.3 on Lundquist-Arora or any of her children individually. (*See* Ex. 6, Letter from R. Griffin to J. Foster, at 1.) But it demanded that FCPS answer, by June 12, 2026, a set of twelve questions, nearly all of which were hypotheticals, to "clarify how the revised policy will be carried out," including the following:

> 1.   Will the school promptly notify the parent if a student asserts a gender-expansive or transgender-identifying status at school?
>
> …
>
> 3.  Will the school facilitate or affirm a student's gender transition even if the parent expresses an objection on religious grounds?
>
> 4. What will happen if a parent disagrees with the support plan designed by the support team? Will the school defer to the parent's preference?
>
> …
>
> 6. Will the school system reflect the student's chosen name and pronouns on internal documents and shared lists if the parent objects? What about in the yearbook or communications to outside media?
>
> 7. Under the revised policy, if a student requests to socially transition at school and the parent has not been notified (or has been notified and objects), what direction will FCPS give to teachers and staff regarding use of preferred names, pronouns, bathrooms, locker rooms, overnights, or sports participation?

---

claim against the original law becomes moot." (quoting *Esposito v. S.C. Coastal Council*, 939 F.2d 165, 171 (4th Cir. 1991))).

8. Does FCPS interpret the revised policy as allowing schools to treat a student's asserted gender as confidential information that can be withheld from parents?

…

10. What specific steps will FCPS take to ensure that parents are not kept in the dark about their child's gender-related issues at school? Does FCPS prohibit staff from encouraging students to withhold information from their parents?

…

12. Does FCPS intend to publish new guidance clarifying how the policy should work in practice?

(*Id.* at 4-5.)

By letter dated June 12, 2026, FCPS informed AFL that it had "thoughtfully and thoroughly worked on the revisions" in Regulation 2603.3 "over the past few months," and because "it is not possible to address every hypothetical scenario in a regulation, especially in a system of FCPS's size," FCPS would be "working to issue a new Guidance Document for our staff regarding the implementation" of the revised Regulation 2603.3. (Compl., ¶ 70; Ex. 7, Letter from J. Foster to R. Griffin.) It added that "[t]o the extent that the eleven hypotheticals in your May 26 correspondence are not already answered by the Revised Regulation, we will endeavor to address them in the Guidance Document." (Ex. 7, Foster Letter, at 1.)

On June 22, 2026, nine days before Regulation 2603.3 went into effect, Lundquist-Arora filed this lawsuit, along with her motion for a preliminary injunction. (Compl. ¶ 70.)

## IV. Lundquist-Arora Alleges Injury Based on a Highly Speculative and Unlikely Chain of Events.

Lundquist-Arora alleges that her three sons are FCPS students whom she has "consistently raised" in the Christian faith and who "regularly attend[]" church with her. (*Id.* ¶¶ 86-87.) Lundquist-Arora objects to Regulation 2603.3 on religious grounds and as a parent who wants "to

6

guide her sons' upbringing." (*Id.* ¶¶ 95-100.)  She believes that "her children, *like all children, may* at some point during adolescence be susceptible to the influence of gender ideology" and she wants to guide them if that occurs.  (*Id.* ¶ 91 (emphasis added).)  She expresses "concern[]" about what FCPS staff "would" do "*[i]f* any of Plaintiff's children were to assert a 'gender-expansive' or 'transgender' identity at school."  (*Id.* ¶ 103; *see also id.* ¶¶ 105-07 (emphasis added).)

Lundquist-Arora does not, however, allege that any of her sons:  identifies as transgender or gender-expansive; uses or has requested to use any pronoun other than male pronouns, or a name other than the name assigned to him at birth; has sought restroom or locker-room access based on gender identity; or has requested or been offered a support team under Regulation 2603.3.  (*See generally id.* ¶¶ 85-111.)

Though Lundquist-Arora's sons are entering the 12th, 10th, and 8th grades, she does not allege that any of them have ever sought or received any accommodations under any of the three prior versions of Regulation 2603, since the first version was adopted in October 2020.  (*See id.* ¶¶ 41, 86.)

In 2024, all three of Lundquist-Arora's sons were petitioners in a case filed in the Circuit Court of Fairfax County, styled *Jane Doe v. Fairfax County School Board*, CL No. 2024-3171 ("the State Court Litigation"), which challenged Regulation 2603.2 under a wholly different set of theories than the ones raised in this case.[2]  (*See* Ex. 8, Second Amended Petition.)  Suing through their mother as their next friend, Lundquist-Arora's minor sons alleged that the School Board, by enacting and applying Regulation 2603.2, had given "greater rights" to transgender and gender-

---

[2] In her Complaint in this case, Lundquist-Arora cites deposition testimony from the State Court Litigation.  (*See* ECF 1, Compl. ¶¶ 43-54.)  She also appends excerpts of deposition testimony from the State Court Litigation to her Memorandum in Support of Motion for Preliminary Injunction in this case.  (*See* ECF No. 4-2, Decl. of R. Wyrick, ¶¶ 13-15; ECF Nos. 4-12, 4-13, 4-14.)

expansive students than to "students whose gender expression and gender identity are the same as their biological sex." (Compl. ¶ 2.) They claimed that the School Board had violated their rights of free speech, free exercise of religion, due process, and equal protection by "prioritizing" the rights of transgender and gender-expansive students over their own. (*Id.* ¶ 24.)

Through Lundquist-Arora, her children alleged that they "do not believe in the concepts or definitions contained in Regulation 2603.2 related to 'gender identity,' 'gender-expansive,' and 'transgender,'" because of their "sincerely held philosophical and religious beliefs." (*Id.* ¶¶ 93-94.) Elaborating on these beliefs, they alleged:

> 83. All three [boys] sincerely believe that God creates each person as male or female, that the complementary sexes reflect the image of God, that sex cannot be altered, and that rejection of one's biological sex is a rejection of the image of God within that person.
>
> 84. All three believe that to acknowledge or endorse that sex can be altered is to speak against God and his own sincerely held religious and philosophical beliefs.
>
> 85. All three further believe that referring to another person using pronouns that do not correspond with biological sex is harmful to themselves because it forces them to lie.
>
> 86. All three also believe that, based on scientific evidence, there are only two anatomical sex presentations, which are male and female.
>
> …
>
> 88. …[A]ll three avoid speaking with (and about) other students who may be "gender expansive" or transgender, and to the extent they do speak about such students, each of them avoids using pronouns.
>
> 89. All three believe that being required to share a common male restroom with females forces them to compromise their comfort, privacy, and sincerely held belief that sex is biologically determined at conception and is immutable.

(*Id.* ¶¶ 81-89.) They also alleged that the "concept … that sex and gender is not an immutable characteristic given by God in his image, but instead fluid, changeable, and properly defined in

Regulation 2603.2" is "anathema" to their "sincerely held philosophical and religious beliefs." (*Id.* ¶ 119.)

**STANDARDS OF REVIEW**

Under Rule 12(b)(1), a complaint must be dismissed if a plaintiff fails to plausibly allege facts establishing the Court's subject-matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]." *Virginia Coal. for Immigrant Rts. v. Beals*, 803 F. Supp. 3d 454, 463 (E.D. Va. 2025) (Giles, J.) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "When a defendant raises standing as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction … the district court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991)).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Merely leaving "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery" is not enough. *Twombly*, 550 U.S. at 561 (internal citation and quotations omitted); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 587 (4th Cir. 2015). The court must accept all well-pleaded factual allegations as true but does not accept "'naked assertions' and 'unadorned conclusory allegations' devoid of 'factual enhancement.'" *Virginia Coal. for Immigrant Rts.*, 803 F. Supp. 3d at 464 (quoting *Iqbal*, 556 U.S. at 679, and *Twombly*, 550 U.S. at 557). Without converting the motion to one for summary judgment, the Court may consider documents that are "integral to and explicitly relied on" in the complaint, and whose

authenticity is not in question.  *Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015); *Philips*, 572 F.3d at 180.  If there is a discrepancy between a document or exhibit cited in the complaint and how the plaintiff characterizes it, the document or exhibit itself controls.  *See, e.g.*, *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

**ARGUMENT**

The Court must dismiss the Complaint because Lundquist-Arora does not allege a justiciable case or controversy under Article III of the Constitution.  She lacks Article III standing and her claims are unripe.  And even if Lundquist-Arora could somehow cure these jurisdictional deficiencies, she fails to state any plausible claim for relief.

**I.      Lundquist-Arora Lacks Standing.**

**A.      Lundquist-Arora Fails to Allege a Cognizable Injury-in-Fact.**

Article III limits the jurisdiction of the federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "[F]ederal courts do not adjudicate hypothetical or abstract disputes," and "may resolve only 'a real controversy with real impact on real persons.'"  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021) (citation omitted).  To establish Article III standing, "a plaintiff must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *Id.* at 423 (citation omitted).

The injury-in-fact prong "requires either a current injury, a certainly impending injury, or a substantial risk of a future injury."  *John & Jane Parents 1 v. Montgomery Cty. Bd. of Educ.*, 78 F.4th 622, 629 (4th Cir. 2023) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)), *cert. denied*, __ U.S. __, 144 S. Ct. 2560 (2024).  "Requiring a plaintiff to demonstrate a

concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only 'the rights of individuals,' and that federal courts exercise 'their proper function in a limited and separated government.'" *TransUnion LLC*, 594 U.S. at 423 (citations omitted).

A plaintiff claiming a prospective injury cannot rely "on a highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). "The risk of a future injury must be substantial, not just conceivable." *Parents I,* 78 F.4th at 629.

Applying these bedrock principles, the Fourth Circuit in *Parents I* held that parents lacked standing to challenge their school board's guidelines that permitted school officials "to develop gender support plans and then withhold information about a child's gender support plan from their parents" because they failed to allege any injury-in-fact. *Id.* at 626–28, 636. Their allegations did not demonstrate any "current injury" because they did not allege that any of "their children [had] gender support plans," or that "their children [participated in] any discussions with school officials about gender-identity or gender-transition issues," so "according to their allegations, no information [was] being withheld from them under the [challenged policy]." *Id.* at 629.

Nor did the *Parents 1* plaintiffs allege a "certainly impending injury" or "a substantial risk of future harm." *Id.* at 630. They did not allege, for example, that "their children might be considering gender transition or have a heightened risk of doing so." *Id.* Instead, they alleged at most that "'for all [they] know,' their children 'might soon be subject to a gender support plan that is withheld from them.'" *Id.* (citation omitted). But that was not enough. Their claims depended on "a speculative fear, the occurrence of which require[d] guesswork as to actions of others" and "any risk of future injury" to the parents was "far more attenuated than what the Supreme Court has allowed." *Id.* at 630–31 (discussing *Clapper*, 568 U.S. at 408–10).

11

So too here. Lundquist-Arora's claimed concern and fear—that FCPS will facilitate her children's social gender transition at school without her knowledge or consent—is highly speculative and even more hypothetical than the claimed injury in *Parents I.* Like the plaintiffs in *Parents I,* Lundquist-Arora does not allege that any of her three children has a gender support plan, identifies as transgender or gender-expansive, or is questioning their gender identity. (*See generally* Compl. ¶¶ 85-111.) Lundquist-Arora already has six years' experience as a parent in a school system with a regulation regarding gender-expansive and transgender students. (*See* Ex. 8, Second Am. Compl. ¶¶ 78-80 (alleging that Lundquist-Arora's three children have attended FCPS since 2014, 2016, and 2018)). Yet, her complaint does not allege a single fact showing that any of her children have ever sought or received any gender-identity supports under any iteration of Regulation 2603 at any time over the past six years.

Lundquist-Arora cannot make even the allegation, deemed insufficient in *Parents I*, that "[f]or all [she knows]," her children "'might soon be' subject to a gender support plan that is withheld from [her]." 78 F.4th at 630. Just last year in the State Court Litigation, Lundquist-Arora alleged on behalf of her children that each of them believes that sex is created by God, is binary, and is immutable. (Ex. 8, Second Am. Compl. ¶¶ 83, 84.) She also alleged that each of her children does not believe in the concepts of transgender, gender identity, or gender-expansive. (*Id.* ¶¶ 93-94.) The possibility that one of her children will transition to a different gender identity at school without her knowledge is highly attenuated and remote.

Moreover, unlike the policy in *Parents 1*, Regulation 2603.3 does not authorize school staff to develop and implement "gender support plans for students … without the knowledge or consent of the students' parents," or "to withhold information about the plans from parents if the school deems the parents to be unsupportive." *Parents 1*, 78 F.4th at 626. Just the opposite—Regulation

2603.3 *requires* that parents *must* be part of the gender support plan process. (ECF 4-10, Regulation 2603.3, § IV(B)). And it *requires* the gender support plan to be accessible to parents in the same manner as other student records. (*Id.*)

Additionally, whether the *Parents 1* plaintiffs would ever sustain an injury based on that policy required "a chain of the following future events to occur: (1) their minor children must determine they identify as transgender or gender nonconforming, (2) their minor children must decide they want to approach the school about a gender support plan, (3) the school must deem the parents unsupportive and (4) it must then decide to keep the information about their children from them." 78 F.4th at 631. Here, whether Lundquist-Arora will ever sustain an injury based on the application of Regulation 2603.3 requires an even longer chain of speculative possibilities. For FCPS staff to facilitate one of her children's gender transition at school without her knowledge, the same hypothetical events in *Parents 1* would have to occur, plus (1) one of her children would have to disavow the beliefs that they declared in the State Court Litigation just last year; and (2) FCPS staff would have to apply Regulation 2603.3 to that child in a manner not supported by its plain language. As in *Parents 1,* "any determination on the likelihood of these events occurring requires guesswork as to both [the] children's actions and actions of the … public schools." 78 F.4th at 631.

*Parents 1* is on all-fours here and dictates the conclusion that Lundquist-Arora's future injury is hypothetical and conjectural, and she lacks standing for her claims.

**B.      Lundquist-Arora's Theory of Standing Contravenes Supreme Court Jurisprudence.**

Lundquist-Arora argues in her preliminary injunction motion that a single sentence from a *per curiam* opinion decided on the Supreme Court's emergency docket trumps *Parents 1* and

confers standing in this case.  (ECF 4, Brief in Support of Preliminary Injunction, at 11-12 (relying

on *Mirabelli v. Bonta*, 607 U.S. 492, 498 (2026) (per curiam)).  She is flat wrong.

*Mirabelli* vacated a stay of a district court's injunction of California school policies that

"permitted disclosure of a student's gender transitioning at school *only if* the student consented."

*Mirabelli v. Bonta*,  607 U.S.  at 493 (emphasis added).  In the district court, each of the plaintiff

parents alleged that: (1) "they have children who expressed gender incongruence while attending

public schools;" (2) "they asked questions about their child and schoolteachers and administrators

intentionally deceived them and did not disclose the truth about their child's gender incongruence;"

and (3) "they are likely to be deceived in the future by public school teachers and administrators

due to" the challenged policies.  *Mirabelli v. Olson*, 761 F. Supp. 3d 1317, 1323 (S.D. Cal. 2025).

The class was represented by parents who "were not told by their daughter's school when she

began to present as a boy and use a male name and male pronouns during her seventh-grade year,"

even in parent-teacher meetings.  *Mirabelli v. Bonta*, 607 U.S. at 493.  Another set of class

representatives believed a "school was using a male name and pronouns for their daughter behind

their backs" but the school refused to share information about the child's transitioning "without

the child's consent." *Id.* at 494.

Based on these facts, the district court found that the class of parents had standing.

*Mirabelli v. Olson*, 761 F. Supp. 3d at 1323 & n.7, 1326.  It entered a permanent injunction that

"prevents the schools from 'misleading' parents about their children's gender presentation at

school and their social transitioning efforts;" "requires the schools to follow parents' directions

regarding their children's names and pronouns," and "compels defendants to include in state-

created or approved instructional materials a notice of the rights protected by the injunction."  607

U.S. at 495.  The Ninth Circuit stayed the injunction pending appeal for multiple reasons, including

14

that the injunction appeared to be "overly broad" and granted relief to "uninjured class members." *Id.* The Supreme Court's *per curiam* order found that the plaintiffs were likely to succeed on the merits of their claims that the policies interfered with the plaintiffs' rights under the Free Exercise Clause and to direct the upbringing and education of their children. *Id.* at 496–97. The order also noted in passing that the Ninth Circuit's "procedural objections" to the injunction were "unlikely to prevail." *Id.* at 498. It observed that "the parents protected by the injunction very likely have standing because they are objects of the challenged exclusion policies." *Id.* (citing *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025)).

The *Mirabelli* order does not confer standing on Lundquist-Arora in this case, for multiple reasons. *First*, unlike the parents in *Mirabelli*, Lundquist-Arora is not the "object[] of" an "exclusion polic[y]." *Id.* Regulation 2603.3 does not direct schools to withhold information from parents. What's more, Regulation 2603.3 *affirmatively requires* parent participation on the student support plan teams. (ECF 4-10, Regulation 2603.3, § IV(B).) Regulation 2603.3 is more akin to—albeit more parent-inclusive than—the policies challenged in *Parents Protecting Our Children v. Eau Claire Area Sch. Dist.,* 95 F.4th 501, 506 (7th Cir.), *cert. denied*, ___ U.S. ___, 145 S. Ct. 14 (2024). Those policies also did not mandate "the exclusion of parents or guardians from discussions or decisions regarding a student's gender expression at school." 95 F.4th at 504. They did, however, allow the possibility that school staff could create a gender support plan without parent involvement, and so directed school officials to make "clear to the student that this plan is a student record and will be released to parents when they request it." *Id.* at 503–04.

Like this case, *Parents Protecting* was a pre-enforcement challenge by an association of parents with "worries" that the school district would "leave parents in the dark if their children wish[ed] to explore their gender identity or begin to socially transition to a different gender at

school" and "fears" that the school would implement the policies "in ways that effectively displace parental rights by making major life decisions for their children." *Id.* at 504. The complaint did not allege that any member's child had questioned their gender identity or otherwise sought guidance or support under the school district policy, "leaving the association unable to plead any withholding of information from parents." *Id.* The Seventh Circuit concluded that the district court had correctly dismissed the case for lack of any injury-in-fact under *Clapper*, and the plaintiff's "expressions of worry and concern" did not suffice to show an injury-in-fact. *Id.* at 506. The Supreme Court denied review of that ruling. 145 S. Ct. at 14.

*Second*, the Supreme Court has "consistently stressed that a plaintiff's complaint must establish … that the alleged injury suffered is *particularized as to him*." *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (emphasis added). The *Mirabelli* order involves a class action with class representatives whose injury-in-fact is established: their children are transgender or gender-expansive, and they alleged that school officials have withheld and are likely to continue to withhold information about their children's gender transitions. 607 U.S. at 493, 496. Indeed, the Supreme Court spent two paragraphs of its otherwise concise order detailing the facts surrounding the class representatives' experiences with California schools. *Id.* at 493–94. By contrast, this case has a single plaintiff whose children are not transgender or even gender-questioning, and have never sought or received any gender-identity-related accommodations from FCPS staff.

*Third*, a preliminary order cannot *sub silentio* overturn decades of Supreme Court and Fourth Circuit precedent. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority sub silentio."); *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) ("[W]e do not lightly presume that the law of the circuit has been overturned."); *see also Mirabelli*, 607 U.S. at 500 (Barrett, J.,

concurring) ("[O]ur assessment is preliminary. We consider the merits not to conclusively resolve them…."); *id.* at 502 (Kagan, J., dissenting) (in this posture "[t]he Court receives scant and, frankly, inadequate briefing about the legal issues in dispute" and "does not hold oral argument or deliberate in conference, as regular procedures dictate").

*Fourth*, Lundquist-Arora's reading of *Mirabelli* defies binding precedent. Indeed, the Fourth Circuit in *Parents 1* stated expressly that the injury-in-fact requirement, as explained by Supreme Court precedent, cannot be reduced to "simply ask[ing] whether the plaintiff was the subject of an allegedly unconstitutional law." 78 F.4th at 633. It pointed out that, "[i]n *Susan B. Anthony List*, the law being challenged applied to the plaintiffs. Nevertheless, the plaintiffs were required to show more—that there was a credible threat of government *action* that would harm them." *Id.* "In other words, a plaintiff must show it is substantially likely she will actually be *injured* by the law, not simply that she must operate under the realm of an unconstitutional law or policy." *Id.* The *Parents 1* plaintiffs thus were required to "show a substantial risk that they will be injured by the school's policy" and "not merely that it applies to their children in the abstract." *Id.*

*Finally*, the Supreme Court that issued the *Mirabelli per curiam* order is also the same one that denied certiorari in *Parents I* and *Parents Protecting*. Unlike in *Mirabelli*, standing was front and center in those cases. If the Supreme Court wanted to revisit decades of standing precedent in this context, it would have done so in one of those merits cases.[3]

---

[3] The out-of-circuit decisions Lundquist-Arora cites in her preliminary injunction brief do not counsel a different result. (ECF 4, Brief in Support of Preliminary Injunction, at 11–12.) As in *Mirabelli*, *City of Huntington Beach v. Newsom* concluded that parents were "objects of" a challenged "exclusion policy" that blocked parents from "constitutionally required mandatory access to information about their children's exhibiting symptoms of gender dysphoria." No. 25-3826, 2026 WL 1785110, at *3 (9th Cir. June 18, 2026). Regulation 2603.3 contains no similar provisions targeting parents for exclusion. Moreover, the *Huntington Beach* court had previously

Without question, *Parents 1*, *Susan B. Anthony List*, and *Clapper* remain binding on this Court, and they dictate the conclusion that Lundquist-Arora lacks standing. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (lower courts "should follow the case which directly controls," leaving to higher courts "the prerogative of overruling [their] own decisions").

## II.       Lundquist-Arora Fails to Allege a Ripe Controversy.

This Court also lacks subject matter jurisdiction because Lundquist-Arora fails to allege a ripe controversy. *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) ("As with standing, ripeness is a question of subject matter jurisdiction." (citation omitted)). "[O]bserving the requirements of ripeness preserves courts from becoming embroiled in controversies not yet of a suitable form for judicial decision." *Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*, 1 F.4th 180, 188 (4th Cir. 2021). Ripeness turns on two requirements: (1) "fitness of the issues for judicial decision," and (2) "hardship to the parties of withholding court consideration." *South Carolina*, 912 F.3d at 730 (citation omitted). Lundquist-Arora satisfies neither.

A case is generally fit for a judicial decision when "the action in controversy is final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). Here, uncertainties abound. As discussed above, Lundquist-Arora does not have a child who is transgender or gender-expansive, or even questioning his gender identity. Moreover, Regulation 2603.3 has not yet been applied to students, and FCPS is still working on a new Guidance Document for staff. (Ex. 7, Letter from J. Foster to R. Griffin.) By her own counsel's admission,

---

assumed injury-in-fact based on a "substantial risk" that the plaintiffs' children would experience gender confusion. *See City of Huntington Beach v. Newsom*, No. 25-3826, 2025 WL 3169324, at *2 (9th Cir. Sept. 12, 2025). The second case, *Doe v. Pine Richland School District*, likewise concerned a policy that excluded parents absent student consent—in direct contrast to Regulation 2603.3 in this case. No. 24-3348, 2026 WL 1103489, at *1 (3d Cir. Apr. 23, 2026).

Lundquist-Arora does not know how Regulation 2603.3 will be applied in the future or what the new Guidance Document will say. (Ex. 6, Letter from R. Griffin to J. Foster.) That guidance could put Lundquist-Arora's fears to rest. Instead of finding out the answers, she rushed to federal court. Lundquist-Arora's claims are not fit for judicial decision.

Her claims are also unripe because they depend on a string of hypothetical future actions. (*See* Section I, *supra*.) These "contingent future events … may not occur as anticipated, or indeed may not occur at all." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (quoting *Texas v. United States,* 523 U.S. 296, 300 (1998)).

Lundquist-Arora likewise faces no immediate hardship. Courts analyze the hardship prong by "considering the immediacy of any threat and the burden imposed on a plaintiff." *Id.* at 271. Regulation 2603.3 does not require Lundquist-Arora to take or abstain from any present action. She is not faced with an immediate dilemma of choosing between complying with the policy and incurring monetary or criminal penalties. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 152–52 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). And she has not alleged that she is presently excluded from any decision about her children under the regulation. Lundquist-Arora's allegations of hardship are nothing more than "concerns" and "fear" about a speculative chain of future events, (*see* ECF 1, Compl. ¶ 111), not "effects of a sort that traditionally would have qualified as harm." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

Lundquist-Arora's claims are unripe and seek to prematurely "entangl[e]" this Court in an "abstract disagreement" with a school district policy that has not been applied to her and that may never be. *Abbott Labs.*, 387 U.S. at 148.

**III.** **Lundquist-Arora Fails to State a Claim for a Violation of Her Free Exercise or Substantive Due Process Rights.**

Even if Lundquist-Arora could somehow overcome the jurisdictional defects in her case, she fails to state a viable claim for relief. Each of Lundquist-Arora's claims rests on the false premise that Regulation 2603.3 requires FCPS teachers and staff to actively facilitate students' gender transitions without telling parents or obtaining their consent. (*See* Compl. ¶¶ 118-19, 132-33, 145, 156.) That premise is belied by the plain language of Regulation 2603.3. It requires that "*[a]ny* accommodations for access to gender-specific facilities, overnight trips or events, gender-specific courses, activities, or athletics, and name or gender-marker changes to non-permanent scholastic records *must be documented in a support plan*." (ECF 4-10, Regulation 2603.3, § IV(B) (emphasis added).) A support plan cannot exist without a support team, which team "*shall include … the student's parent*." (*Id.* § IV(A) & (B) (emphasis added).) If the regulation is applied, "*[e]very effort shall be made* to encourage and support communication between gender-expansive or transgender students and the student's parents." (*Id.* § IV(F) (emphasis added).) Rather than exclude parents, Regulation 2603.3 ensures that they are actively involved and informed.

As shown below, Lundquist-Arora's mischaracterization of Regulation 2603.3's plain language is fatal to her claims.

**A.** **Lundquist-Arora Fails to State a Free Exercise Claim.**

The First Amendment guarantees that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. amend. I. This guarantee applies equally to state laws. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Yet, "'the right of free exercise does not relieve an individual of the obligation to comply with' neutral and generally applicable laws," even if they have an incidental effect on religious exercise. *See Perry v. Marteney*, 172 F.4th 315, 321 (4th Cir. 2026) (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990)).

Heightened scrutiny for such laws "would open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind." *Smith*, 494 U.S. at 888–89. Thus, "courts will only scrutinize neutral and generally applicable laws for a rational basis." *Perry*, 172 F.4th at 321–22.

Regulation 2603.3 is a neutral, school division-wide policy that withstands rational basis scrutiny. Regulation 2603.3 applies uniformly to all FCPS students regardless of religious belief. It does not reference religion or target religious parents. (*See generally* ECF 4-10, Regulation 2603.3.) And it does not single out religious parents by providing individualized secular exemptions while denying religious ones. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 545–46 (1993). Moreover, it fulfills the School Board's mandate under Virginia law to have policies "concerning the treatment of transgender students," including "maintenance of student records," "protection of student privacy and the confidentiality of sensitive information," "student participation in sex-specific school activities and events and use of school facilities." Va. Code § 22.1-23.3. Because Regulation 2603.3 is rationally related to FCPS's legitimate interest in protecting student privacy and providing a safe, supportive, and inclusive school environment, it withstands constitutional scrutiny. *Perry*, 172 F.4th at 322 ("A law can withstand rational basis scrutiny so long as it is 'rationally related to a legitimate governmental interest.'" (citation omitted)); *id.* at 328 (rational basis is a "highly deferential standard of review").

Lundquist-Arora makes no attempt to carry her "burden of negating 'any reasonably conceivable state of facts that could provide a rational basis'" for Regulation 2603.3. *See Kim v. Bd. of Educ. of Howard Cty.*, 93 F.4th 733, 749 (4th Cir. 2024) (quoting *Heller v. Doe*, 509 U.S.

312, 320 (1993)). Any effort to do so would be futile. *See id.* Instead, she alleges that Regulation 2603.3 implicates heightened scrutiny. It does not.

Initially, Regulation 2603.3 does not "'substantially interfer[e] with the religious development'" of Lundquist-Arora's children. *Mahmoud v. Taylor*, 606 U.S. 522, 546 (2025) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972)); *see* Compl. ¶¶ 28, 121. *Mahmoud* concerned a school policy that prevented parents from opting their children out of classroom instruction that included "LGBTQ+-inclusive storybooks." *Mahmoud*, 606 U.S. at 550–55. The challenged curricular materials were "unmistakably normative" and "clearly designed to present certain values and beliefs as things to be celebrated and certain contrary values and beliefs as things to be rejected." *Id.* at 550. Because these materials were "hostile" to the parents' religious beliefs, the storybooks posed "'a very real threat of undermining' the religious beliefs" they wished to instill in their children. *Id.* at 530 (quoting *Yoder*, 406 U.S. at 218). That was especially true because the books would be "presented to young children by authority figures in elementary school classrooms." *Id.* at 554.

Those circumstances are not present here. Regulation 2603.3 provides the procedures that school staff must follow when a student or parent asks for accommodations based on transgender or gender-expansive status, and describes what accommodations are to be made available to the student and parent. The accommodations are provided on an individual basis and provided only upon request. In other words, unlike the policy in *Mahmoud,* Regulation 2603.3 applies only when students and their parents "opt in" to access those benefits. Regulation 2603.3 does not impose mandatory requirements upon students, or take away any parental choice or control over their children's religious development.

22

Lundquist-Arora seeks refuge in *Mirabelli*'s preliminary *per curiam* order, but that, too, does not make her Free Exercise claim plausible in this case. (*See* Compl. ¶¶ 115, 120.) *Mirabelli* stated that "*unconsented facilitation* of a child's gender transition" qualified as a substantial interference with religious development. 607 U.S. at 496 (emphasis added). The California policies in *Mirabelli* "permitted disclosure of a student's gender transitioning at school *only if* the student consented," and required schools to "use children's preferred names and pronouns *regardless of their parents' wishes*." *Id.* at 493 (emphasis added). But those features are absent from Regulation 2603.3.

Lundquist-Arora reaches the opposite conclusion only by misreading Regulation 2603.3. But the Court need not and should not credit allegations that are belied by the text of the challenged regulation itself. *Veney*, 293 F.3d at 730 (courts need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" (citation omitted)); *see also Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006).

Contrary to Lundquist-Arora's allegations, the regulation expressly requires a support plan for access to gender-specific facilities, overnight trips, gender-specific courses, participation in gender-specific clubs or activities, and name and gender marker changes in non-permanent scholastic records, such as class lists and yearbooks.[4] (Ex. 5, Regulation 2603.3, § IV(B).) And it requires that the support plan be developed with the participation of the student's parent. (*Id.*, § IV(A).) All the latter provisions in the regulation that Lundquist-Arora highlights discuss what each of these accommodations can include. While Regulation 2603.3 does not require a documented gender support plan for a student to request that staff refer to them by a chosen name

---

[4] Changes to permanent scholastic records require "[a] court order or an official government document." (Regulation 2603.3, § V.A.)

or pronoun, it does require such a plan to make any changes to name and gender markers in scholastic records, including internally-generated and shared school lists of students. (*Id.* § IV(B).) And nothing in the Regulation directs staff to use students' chosen names or pronoun over their parents' objections. Because the lawsuit and injunction motion were filed even before Regulation 2603.3 went into effect, Lundquist-Arora cannot, and does not, allege that Regulation 2603.3 has ever been applied to anyone in the manner she fears.

Lundquist-Arora does not plausibly allege that Regulation 2603.3 burdens her rights or implicates heightened scrutiny. For her Free Exercise claim, "all roads end with rational basis review"—which is easily met by Regulation 2603.3. *Kim*, 93 F.4th at 749.

**B.        Lundquist-Arora Fails to State a Substantive Due Process Claim.**

Lundquist-Arora's Substantive Due Process claim suffers the same fate. Lundquist-Arora's claim hinges on the allegation, derived from the Supreme Court's preliminary decision in *Mirabelli*, that "policies concealing information from parents and facilitating a child's gender transition at school likely infringe upon Due Process Protections." (Compl. ¶ 143.) But nothing in Regulation 2603.3 authorizes staff to conceal information from parents. If anything, it does the opposite—it *requires* parental participation in decisions regarding their children's gender nonconformance. (*See* Ex. 5, Regulation 2603.3, § IV(A), (B), & (F).)

Lundquist-Arora's allegations again are contingent upon her misreading of the regulation. (*See* Section III.A, *supra*.) Lundquist-Arora alleges that Regulation 2603.3 "ensures that material decisions affecting a student's identity, social environment, and mental health are made without parental notice, involvement, or consent." (Compl. ¶ 146.) She worries in particular about "access to sex-segregated facilities based on gender identity." (*Id.* ¶ 145.) But Regulation 2603.3 expressly states that any accommodations for access to gender-specific facilities must be documented in a support plan, which can only be developed with the student *and* parent. (Ex. 5,

24

Regulation 2603.3 § IV(A) & (B).)  The Regulation states that "[s]tudents who identify as gender-expansive or transgender should be called by their chosen name and pronouns by staff," but it does not authorize staff to do so over the parents' objections and further requires that any name or gender-marker changes in class lists or other non-permanent school records require a documented support plan developed by a team that must include the parent.  (*Id.* §§ IV(B) & V.)  And it requires the gender support plan to be equally available to parents as other student records.  (*Id.*, § IV(B).)  Moreover, it ensures parent-driven dialogue with school staff by expressly stating that a parent "may request that the support team be reconvened at any time."  (*Id.*, § IV(E).)

Far from shutting parents out, Regulation 2603.3 promotes parental participation and knowledge.  Nothing in the Regulation supports Lundquist-Arora's speculation that school staff will be required to provide students gender-identity accommodations over the parent's objections.  And given that Regulation 2603.3 did not go into effect until after Lundquist-Arora's suit was filed, her theories about how the Regulation will be applied are pure conjecture.

Because Lundquist-Arora's claim that Regulation 2603.3 leaves parents out cannot be squared with the plain text of the regulation and is not supported by any real-world application of the regulation, she cannot plausibly allege a Substantive Due Process violation.  *See Veney*, 293 F.3d at 730.

### C.      Lundquist-Arora Fails to State Any Claims under the Virginia Constitution.

Lundquist-Arora's parallel claims under the Free Exercise and Due Process clauses of the Virginia Constitution fare no better than her federal claims.  Start with Lundquist-Arora's Due Process claim under Article I, § 11 of the Virginia Constitution.  "Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis [applies] to both."  *Shivaee v. Commonwealth*, 270 Va. 112, 119,

613 S.E.2d 570, 574 (2005). Thus, Lundquist-Arora's claim under Article I, § 11 of the Virginia Constitution fails for the same reasons as her federal due process claim. *See* Section III.B, *supra*.

As for Lundquist-Arora's Virginia Free Exercise claim, although the Supreme Court of Virginia has recognized that Article I, § 16 is not governed by the same analysis as the federal Free Exercise clause, *Vlaming v. West Point School Board*, 302 Va. 504, 544, 895 S.E.2d 705, 725 (2023), Lundquist-Arora has not plausibly alleged that Regulation 2603.3 infringes on her free exercise rights. *Vlaming* concerned a high school French teacher who refused to refer to a student by the student's preferred pronouns. *Id.* at 521. The teacher offered to refer to the student by a preferred name while avoiding the use of third-person pronouns. *Id.* at 522–23. After several meetings and discussions with school staff, however, the school board "rejected" the teacher's approach and "compelled him to use government-approved pronouns." *Id.* at 540. When the teacher continued to refuse based on his sincerely held religious beliefs, the school board fired him. *Id.* at 526.

Lundquist-Arora faces no similar burden on her religious exercise. Under the standard outlined in *Vlaming*, a claimant must identify a concrete interference with her religious rights, not a speculative future application. Lundquist-Arora has not done so. Because hers is a pre-enforcement challenge of Regulation 2603.3, she cannot do so. Unlike the teacher in *Vlaming*, Lundquist-Arora has not been compelled to say or do anything and has not been the subject of a present application of the regulation. In addition, as discussed above, Lundquist-Arora's suggestion that Regulation 2603.3 directs FCPS to "facilitate[e] a child's social gender transition without parental knowledge or consent" is belied by the plain text of the regulation. (*Compare* Compl. ¶ 135 *with* Ex. 5, Regulation 2603.3, § IV(A), (B), (E), & (F).) Lundquist-Arora therefore has not plausibly alleged a Virginia Free Exercise claim.

26

**IV.    Lundquist-Arora's Request for Universal Declaratory Relief Fails as a Matter of Law.**

Although the allegations in the Complaint center on how Regulation 2603.3 could hypothetically impact Lundquist-Arora individually, part of the relief Lundquist-Arora seeks is a broad declaration that the regulation is unconstitutional.  (Compl. ¶ 9 ("The regulation should be declared unconstitutional, and Defendants should be enjoined from enforcing it."); *id.*, Prayer for Relief ¶(a) (seeking "[a] declaration that Regulation 2603.3 violates the Free Exercise and Due Process Clauses of the U.S. and Virginia Constitutions").  Lundquist-Arora comes nowhere close to alleging the facts necessary to sustain this aspect of her complaint.

"For a host of good reasons, courts usually handle constitutional claims case by case, not en masse." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450–451 (2008)).  "'Claims of facial invalidity often rest on speculation' about the law's coverage and its future enforcement." *Id.* (quoting *Washington State Grange*, 552 U.S. at 450).  "And 'facial challenges threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways." *Id.* (quoting *Washington State Grange*, 552 U.S. at 451).  Thus, a plaintiff cannot succeed on a facial challenge "unless [s]he 'establish[es] that no set of circumstances exists under which the [law] would be valid,' or [s]he shows that the law lacks a 'plainly legitimate sweep.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Lundquist-Arora does not meet that rigorous standard here.  She cannot plausibly allege that Regulation 2603.3 is unconstitutional in *any* of its potential applications, let alone *all* of them.  Indeed, she does not even attempt to do so.  Lundquist-Arora's request for broad declaratory relief is therefore inappropriate and must be dismissed.  *See Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025) ("[N]either declaratory nor injunctive relief … can directly interfere with enforcement of

27

contested statutes or ordinances except with respect to the particular federal plaintiffs." (quoting

*Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975))).

**V.      The Official-Capacity Claims against Dr. Reid Should Be Dismissed as Duplicative.**

Finally, Dr. Reid should be dismissed as a defendant with prejudice because she is named only in her "official capacity" as the Superintendent of the School Board, the principal defendant. ( Compl. ¶ 12.)  Such official-capacity designations "represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  "It is *not* a suit against the official personally, for the real party in interest is the entity."  *Id*. at 166. Accordingly, courts routinely dismiss official-capacity defendants as "duplicative."  *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the ... claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also, e.g.*, *Z.G. v. Pamlico Cty. Pub. Schs. Bd.*, 744 F. App'x 769, 780 (4th Cir. 2018) (same); *Emesowum v. Arlington Cty.*, No. 1:20-cv-113, 2020 WL 3050377, at *6 (E.D. Va. June 5, 2020) (dismissing duplicative official-capacity defendants with prejudice).

**CONCLUSION**

The Court lacks subject matter jurisdiction to decide this case because Lundquist-Arora has not carried her burden of establishing standing and her claims are unripe.  But even if those threshold obstacles could be surmounted—and they cannot—Lundquist-Arora has not stated a plausible claim for relief because Regulation 2603.3 actively involves parents in decisions regarding their children, and contains no language that would fence them out or conceal information from them.  Defendants' motion to dismiss should be granted.

Respectfully submitted,

By:    /s/ *Sona Rewari*
       Sona Rewari (VSB No. 47327)
       HUNTON ANDREWS KURTH LLP
       2200 Pennsylvania Avenue, NW
       Washington, DC 20037
       Telephone: (202) 955-1974
       Facsimile: (703) 918-4018
       srewari@hunton.com

       J. Pierce Lamberson (VSB No. 93616)
       HUNTON ANDREWS KURTH LLP
       Riverfront Plaza, East Tower
       951 East Byrd Street
       Richmond, VA 23219
       Telephone:  (804) 787-8039
       Facsimile:  (804) 788-8218
       plamberson@hunton.com

       *Counsel for Defendants*
       *Fairfax County School Board*
       *and Dr. Michelle C. Reid*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2026, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for Plaintiff.

/s/ *Sona Rewari*
Sona Rewari