# Exhibit 6



May 26, 2026

**Sent Via Email**

John E. Foster
Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042

**RE:** **Changes to Regulation 2603 and Accompanying Guidance Related to Gender-Expansive and Transgender Students**

Dear Mr. Foster:

Thank you for your response to our letter dated April 28. We have carefully reviewed the changes FCPS made to Regulation 2603. Those revisions do not moot our concerns and fail to cure the serious constitutional infirmities we previously identified.

As explained in our earlier letter, FCPS's Regulation 2603.2 and the accompanying Guidance Document were unconstitutional. The policies required teachers and school administrators to facilitate and support students' social transitions. The policies not only omitted parental notice but also failed to require parental consent before taking steps to transition students and included no way for parents to opt out. Those policies were materially indistinguishable from *Mirabelli v. Bonta*,[1] and as such violated parents' due process and free exercise rights. The policies also violated FERPA by creating a parallel records system containing material information about a student's day-to-day educational experience but hidden from parents.

FCPS has now revoked the Guidance Document and revised Regulation 2603. FCPS's modification amount to superficial tweaks that do not remedy the underlying constitutional violations. We therefore maintain our position that Regulation 2603, even as amended, is unconstitutional.

## I. FCPS's revised policy suffers from the same constitutional infirmities.

The principal change to the policy makes the parent a part of a student's "support team." This change does not adequately address the three constitutional infirmities with the policy: lack of parental knowledge, consent, and ability to opt out.

---

[1] 146 S. Ct. 797 (2026)

*Parental Knowledge*:

Parents have "the right not to be shut out of participation in decisions regarding their children's mental health," including gender dysphoria.[2] The new rule does nothing to guarantee notice to the parent when a school is made aware that a student is questioning his or her gender.

Unlike the old rule, which required the school to offer to convene a support team any time "a school is made aware of a student's gender-expansive or transgender status," the new rule provides for one only when requested by the student or parent. With this change, the unconstitutional secrecy element remains. Removing the provision that makes the offer of a support team mandatory does nothing to ensure parental notification. If a student never requests a support team, a school could continue to facilitate the student's transition without any parental notification, consent, or involvement. And allowing a parent to request a support team assumes the parent is aware of their child's gender confusion. It is of no help to those parents who have been kept in the dark.

Relatedly, while the policy no longer includes language that suggested schools should affirmatively hide gender-transition related information from parents, it does not explicitly prohibit them from doing so.

Even if a student or parent requested a support team, thus triggering the new provision adding a parent to that team, nothing in the new policy contemplates a continuing duty on the part of the school to keep the parent informed. In fact, the policy contemplates administrators having "[r]egular check-ins with the student" with no requirement of parental involvement. At best, the policy "*may*" include an "[a]nnual conference" with the support team that the parent would be included in. There is nothing in the policy that ensures ongoing parental involvement.

*Parental Consent*:

As explained in our initial letter, the policy fails to ensure adequate parental consent before the school implements social changes.[3] The changes to the policy do nothing to fix this problem. The provisions of the policy still require that gender-expansive and transgender-identifying students "should be called by their chosen name and pronouns" and "shall be provided with the option of using a locker room or restroom consistent with the student's gender identity." Nothing requires parental consent before teachers and staff are required to accede to a student's request.

---

[2] *See id*. at 803.

[3] *See id*. at 802 (finding the "unconsented facilitation of a child's gender transition" to violate free exercise).

Similarly, the policy has been updated to require internal electronic systems and shared student lists to reflect the names "designated by the students *and* parents" (emphasis added). The previous policy only required using the name designated by the student or by "the student *or* parents" (emphasis added). But the revised policy doesn't explain what happens if the student and parents disagree. Moreover, the new policy does not similarly include parents' viewpoints for "school documents such as yearbooks and communications to outside media." For that, only the *students'* "chosen names and appropriate gender markers" are used.

Even with the support team, the policy does not appear to give parents any authority to override the school's support plan. The parent is just one voice of many. It appears that if a majority of the support team agrees to implement a plan informing all teachers of the student's new chosen name and pronouns, but the parent disagrees, the school would continue to honor the student's preference over the parent's.

*Opt-Out or Exemptions*:

The policy still contains no opt-out process or religious liberty exemption. As explained in our first letter, such processes are necessary if a policy like Regulation 2603 is to respect the free exercise rights of parents and students. As *Mahmoud v. Taylor* explains, the free exercise clause protects the "practice of educating one's children in one's religious beliefs."[4] Each of the accommodations described in the policy—calling a student by preferred name and gender, allowing a student to use preferred gender facilities, assigning a student to a hotel room based on their preferred gender—could violate a family's religious beliefs. The policy thus "places an unconstitutional burden on the parents' religious exercise if it is imposed with no opportunity for opt outs."[5]

Adding the parent to the support group fails to cure this problem. As explained above, the parent has no ability to override the decisions of the support group. More importantly, there is no mechanism for a parent to opt out of the support group system altogether. Mere participation in a system that refers to their child as "gender-expansive or transgender" violates the religious beliefs of many families.

\* \* \*

Finally, while FCPS has rescinded the Guidance Document that directed staff to facilitate transitions while affirmatively withholding information from parents, stated that schools "shall not disclose confidential information related to the student's transition," and plainly violated FERPA by encouraging schools to maintain secret parallel record systems, FCPS has not meaningfully changed the parts of Regulation

---

[4] *Mahmoud v. Taylor*, 606 U.S. 522, 547 (2025)

[5] *Id.* at 568; *Mirabelli*, 146 S. Ct. at 803-04 (noting that a religious exemption would still serve any state interest in safety).

2603.3 that authorized those actions. Without meaningful change to Regulation 2603, the policy underlying the Guidance Document, FCPS could still consider the Guidance Document's interpretation of that policy to be correct.

## II.  Requested Remedial Action

To conclude, Regulation 2603.3 suffers from many of the same constitutional infirmities as Regulation 2603.2, namely that it allows and encourages schools to facilitate a student's social gender transition without the parent's knowledge or consent.

To clarify how the revised policy will be carried out, AFL requests answers to the following questions by June 12, 2026:

1. Will the school promptly notify the parent if a student asserts a gender-expansive or transgender-identifying status at school?
2. If a student chooses not to request a support team, will the school continue to facilitate or affirm the student's transition without parental notice or involvement?
3. Will the school facilitate or affirm a student's gender transition even if the parent expresses an objection on religious grounds?
4. What will happen if a parent disagrees with the support plan designed by the support team? Will the school defer to the parent's preference?
5. Will the parent be given the opportunity to attend the regular check-ins contemplated by Regulation 2603.3(IV)(C)(2)? If not, will the parent be informed about the outcome of the check-in by the school?
6. Will the school system reflect the student's chosen name and pronouns on internal documents and shared lists if the parent objects? What about in the yearbook or communications to outside media?
7. Under the revised policy, if a student requests to socially transition at school and the parent has not been notified (or has been notified and objects), what direction will FCPS give to teachers and staff regarding use of preferred names, pronouns, bathrooms, locker rooms, overnights, or sports participation?
8. Does FCPS interpret the revised policy as allowing schools to treat a student's asserted gender as confidential information that can be withheld from parents?
9. Will FCPS provide parents a meaningful exemption or process to opt-out from Regulation 2603.3 or any other policy or practice that facilitates or affirms a student's gender transition at school?
10. What specific steps will FCPS take to ensure that parents are not kept in the dark about their child's gender-related issues at school? Does FCPS prohibit staff from encouraging students to withhold information from their parents?
11. Does FCPS acknowledge that the recission of the prior Guidance Document means that the practices it promoted (withholding information from parents,

maintaining secret transition plans, and creating parallel records) are no longer permitted under the revised Regulation?

12. Does FCPS intend to publish new guidance clarifying how the policy should work in practice?

Thank you for your prompt attention to this important matter.

Sincerely,

*/s/ Rachael Griffin*
Rachael Griffin
Attorney
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C. 20003
(301) 971-2757
rachael.griffin@aflegal.org

CC:  Frank E. Miller Jr., U.S. Department of Education
     Hon. Harmeet Dhillon, U.S. Department of Justice