# Exhibit 8

**V I R G I N I A:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | | |
|---|---|---|
| **JANE DOE**, and **S.A.1, V.A.,** and **S.A.2, minor children** through their mother and next friend, **STEPHANIE LUNDQUIST-ARORA,** | ) ) ) ) | |
| *Petitioners,* | ) ) | |
| v. | ) ) | Civil Action No. 24-3171 |
| **FAIRFAX COUNTY SCHOOL BOARD**, | ) ) ) ) | |
| *Respondent.* | ) ) ) | |

## SECOND AMENDED PETITION FOR DECLARATORY, INJUNCTIVE, AND ADDITIONAL RELIEF

This is a civil rights action under the Constitution and laws of the Commonwealth of Virginia. This Petition incorporates the Petition of March 5, 2024, the First Amended Petition of August 15, 2024, and further alleges as follows:

## INTRODUCTION

1. This action challenges the actions, policies, and regulations of Respondent Fairfax County School Board (the "School Board" or the "Board") that violated and continue to violate the constitutionally guaranteed free exercise rights, free expression rights, due process rights, and equal protection rights of students at Fairfax County Public Schools ("FCPS"), including Jane Doe and minor children S.A.1, V.A., and S.A.2 (by their next friend) (collectively "the Petitioners").

2. The School Board violated the Virginia Constitution and laws of the

Commonwealth by enacting and applying Regulation 2603.2 and its enforcement scheme, which violated the Petitioners' free speech, free exercise, due process, and equal protection rights. The purpose, intent, and plain language of Respondent's regulations and enforcement scheme is to provide greater rights to students whose gender expression and gender identity are different from their biological sex than it does to students whose gender expression and gender identity are the same as their biological sex.

3. Specifically, FCPS Regulation 2603.2 and its application unconstitutionally violated the Petitioners' free exercise rights by compelling them to refer to "[s]tudents who identify as gender-expansive or transgender [] by their chosen name and pronoun, regardless of the name and gender recorded in the student's permanent pupil record."

4. Regulation 2603.2 and its application compel all students, including the Petitioners, to speak and act in a certain way on the concept of gender identity, which is among many controversial topics that are rightly perceived as sensitive political topics and occupy the highest rung on values inherent in inalienable liberty rights and merit special protection. Yet, the Respondent has knowingly and blatantly violated the Petitioners' rights by forcing them to give a verbal salute to the government's preferred ideological and political viewpoint or face mandatory discipline.

5. Regulation 2603.2 and its application violate the due process rights of all students, including the Petitioners, as its terms, definitions, and directives for

application are so vague that they create a subjective enforcement regime where ordinary Virginians must guess at their meaning.

6. Regulation 2603.2 violated Jane Doe's constitutional free exercise rights, allowing gender-expansive and transgender students to use the common restroom of the opposite sex to live in accordance with their secular beliefs. Conversely, Jane Doe was denied the ability to live her daily life in accordance with her faith because the Regulation forced her to use common restrooms with members of the opposite sex.

7. Regulation 2603.2 similarly continues to deny the other Petitioners (and all other students) their free exercise rights. Students who wish to use a common restroom of their biological sex and are limited only to their biological sex—in accordance with their religious values, morality, and beliefs—must give way whenever a gender-expansive or transgender student exercises his or her school board-given "right" to use such a restroom.

8. Regulation 2603.2 violates the Petitioners' right to be free from government discrimination on the basis of sex as it creates gender-based classifications—"gender identity" and "transgender"—and provides to those classes of students an absolute right to feel safe and comfortable in the common restroom of their biological sex or opposite sex while offering to students whose biological sex matches their gender expression and gender identity a conditional right to feel safe and comfortable in the common restroom of their biological sex; a right that is lost when a gender-expansive or transgender student exercises his or her right to use such common restroom.

3

9.     In enacting Regulation 2603.2, the Respondent knowingly and intentionally created a new classification of students (transgender and gender-expansive) and prioritized their rights over the sex-based, free-exercise, and free-speech rights of all other students, including the Petitioners.

**PARTIES**

10.     63.     At all times relevant to the facts giving rise to this petition, Jane Doe was a Fairfax County, Virginia, resident and a high school student at Fairfax County Public Schools subject to the Respondent's rules and regulations.

11.     S.A.1 is a minor child, a resident of Fairfax County, Virginia, and a high school student in Fairfax County Public Schools at all times relevant to his claims. He brings this suit by his next friend and mother, Stephanie Lundquist-Arora, pursuant to VA. CODE ANN. § 8.01-8.

12.     V.A. is a minor child, a resident of Fairfax County, Virginia, and a middle school student in Fairfax County Public Schools at all times relevant to his claims. He brings this suit by his next friend and mother, Stephanie Lundquist-Arora, pursuant to VA. CODE ANN. § 8.01-8.

13.     S.A.2 is a minor child, a resident of Fairfax County, Virginia, and an elementary school student at Fairfax County Public Schools at all times relevant to his claims. He brings this suit by his next friend and mother, Stephanie Lundquist-Arora, pursuant to VA. CODE ANN. § 8.01-8.

14.     The Respondent, Fairfax County School Board (the "School Board" or "Board"), is the public body that governs Fairfax County Public Schools (the

4

"School District" or "District"). It is located in Fairfax County, Virginia.

15. The School Board has final policymaking and decision-making authority for rules, regulations, and decisions that govern school division personnel, including the Regulations and actions challenged herein.

16. The School Board exercised its policy-making authority by adopting Regulation 2603.2 and its enforcement scheme.

## JURISDICTION AND VENUE

17. This Court has personal and subject matter jurisdiction under VA. CODE ANN. §§ 8.01-328.1, 17.1-513.

18. This Court has the authority to issue the relief sought under VA. CODE ANN. §§ 8.01-184–190 (declaratory judgment and damages); §§ 8.01-620–633 (injunctive relief and damages); and § 57-2.02 (declaratory judgment and injunctive relief to vindicate religious freedom rights).

19. The Respondent is subject to this Court's jurisdiction under VA. CODE ANN. § 22.1-71.

20. Venue is proper in this judicial circuit under VA. CODE ANN. § 8.01-261 because the petition is brought in the Circuit Court of the county where the acts giving rise to this Complaint took place, because Defendant has its place of business in this circuit, and because the Petitioner resides in this circuit.

### Factual Background

#### *FCPS Regulations and Guidance Documents*

21. The Respondent intentionally created a new classification to treat (and

does treat) people within that classification differently. It created new categories of people (transgender and gender-expansive), and it intentionally and purposely gave those people greater rights than others through the adoption of its policies.

22. The Respondent has been aware of religious objections to their policies for the past nine years and yet never attempted to accommodate or engage with such objections. Instead, they have pushed the envelope at every opportunity to force compliance with their preferred policies and preferred speech—regardless of free exercise, free speech, due process, equal protection, or other objections.

23. Since 2015, the Respondent has not only promoted its favored message of gender identity, but it has elevated that position— which is a sensitive political and religious issue—over all other rights, including religious rights and equal protection rights. For instance:

    a. The Respondent adopted amendments to Policy 1450 despite a letter from Alliance Defending Freedom ("ADF"), sent on behalf of FCPS parents, that informed the school board of the policy's impact on the free exercise and equal protection rights of a vast majority of students;

    b. The Respondent eliminated references to biological sex from the curriculum in favor of vague and confusing definitions and categories based on the nebulous concept of "gender identity";

    c. The Respondent enforced vague policies despite knowledge of community and student dissent on constitutional grounds;

    d. The Chair of the School Board was sworn into office in December of

2023 on a book promoting the concept of gender identity;

    e.  As alleged in this petition, when presented with accommodation dueling requests for accommodation, the school always follows its policies, which mandate choosing the rights of gender-expansive and transgender students over the constitutionally protected rights of other students.

24. The Respondent's history of prioritizing the rights of gender-expansive and transgender students over all others can be traced to March of 2015 when the Respondent began consideration and debate on an amendment to Policy 1450 that would create a new classification of students protected from discrimination ("gender identity"). Despite publicized concerns from the community and some members of the school board that this amendment would be used to violate the free exercise and equal protection rights of all other students, the Respondent voted to make "gender identity" a class protected by Policy 1450.

25. Three years later, in 2018, the Respondent voted to replace the term "biological gender" from its curriculum and replace it with the phrase "sex assigned at birth." When a member of the committee recommending the language change to the board suggested using the term "sex" instead of "sex assigned at birth," she was removed from the committee. During the vote to ultimately recommend the changed language to the full school board for passage, one member of the committee stated that "biological sex is essentially meaningless."

26. On October 9, 2020, pursuant to Policy 1450, the Respondent adopted

the first iteration of Regulation 2603 entitled "Gender-Expansive and Transgender Students."

27. Today, this regulation has been superseded by Regulation 2603.2, which took effect on April 21, 2022. A true copy is attached as *Exhibit 1*.

28. Also in 2020, the Respondent published a document entitled "Regulation 2603 Gender-Expansive and Transgender Students Guidance Document." A true copy is attached as *Exhibit 2*.

29. The 2020 Guidance Document defines "[g]ender identity" as, "A person's sense of their own identity as a boy/man, girl/woman, something in between, or outside the male/female binary. Gender identity is an innate part of a person's identity and can be the same or different than the sex assigned at birth." *Ex 2* at 5.

30. The Guidance Document defines "gender-expansive / gender non-conforming / gender-diverse / gender-fluid / gender-non-binary / agender / genderqueer" as, "Terms that convey a wider, more flexible range of gender identity and expression than typically associated with the social construct of a binary (two discreet and opposite categories of 'male and female') gender system." *Id.*

31. The Guidance Document defines "transgender" as "an individual whose gender identity is different from that associated with the individual's sex assigned at birth. An individual can express or assert a transgender identity in a variety of ways, such as pronoun usage, mannerisms, and clothing. Medical treatments or procedures are not considered a prerequisite for identifying students as transgender." *Id.* at 6.

32. According to Regulation 2603.2, its purpose is "[t]o establish procedures

8

and guidelines for schools to ensure that *all students,* including gender-expansive and transgender students experience a safe, supportive, and inclusive environment." *Ex. 1* at 1 (emphasis added). Additionally, Regulation 2603.2 states, "[a]ll students have a right to privacy Fairfax County Public Schools facilities." *Id.*

33. The reality of the Regulation and its application, however, is that it elevates the interests of those classified as "gender-expansive" and "transgender" students over students who are not gender-expansive, irrespective of the free exercise rights of any student. For example, Regulation 2603.2 states:

a. "Students who identify as gender-expansive or transgender should be called by their chosen name and pronouns, regardless of the name and gender recorded in the student's permanent pupil record." *Ex. 1* at 3.

b. "Gender-expansive and transgender students shall be provided with the option of using a locker room or restroom consistent with the student's gender identity." *Id.* at 4.

c. "Gender-expansive and transgender students may also be provided with the option of using the facilities that correspond with the student's sex assigned at birth." *Id.* at 5.

d. "In no case shall a gender-expansive or transgender student be required to use a locker room or restroom that conflicts with the student's gender identity or be limited to using only a private area, single-occupancy accommodation, or other single-use facility." *Id.* at 4.

9

34. Meanwhile, for students who object to sharing a restroom with a member of the opposite sex for any reason—including their sincerely held religious beliefs or their desire to share a common restroom with only students of the same biological sex—Regulation 2603.2 states that they, "Shall be provided with a reasonable, non-stigmatizing alternative, such as the use of a private area (e.g., a nearby restroom stall with a door, an area separated by a curtain, or a nearby health or single-use/unisex bathroom), or with a separate changing schedule (e.g., using the locker room that corresponds to the student's gender identity before or after other students). *Id.*

35. As per the clear terms of Regulation 2603.2, a transgender or gender-expansive student can use either the common restroom that matches their biological sex or the bathroom of the sex with which he or she identifies, depending on their subjective level of comfort.

36. Conversely, a student who only feels comfortable sharing a common restroom solely with members of the same biological sex, whether to remain faithful to their sincerely held religious beliefs or to maintain privacy from the opposite sex, must either sacrifice those beliefs and their privacy from the opposite sex or use one of the four single-use bathrooms in the entire school.

37. Regulation 2603.2 also cross-references several other policies and regulations, including "Policy 1450.7, Nondiscrimination" and "Regulation 4952.5, Discrimination and Harassment on a Protected Class." *Ex. 1* at 6. A true copy of Regulation 4952.4 is attached as *Exhibit 3*.

10

38. Regulation 4952.5, in turn, prohibits "gender-based harassment" and defines this as "acts of verbal, non-verbal, and/or physical aggression, intimidation, or hostility based on a person's sex, or sex-stereotyping, but which are not necessarily sexual in nature." *Ex. 3* at 2.

39. Examples include gendered name calling, gendered remarks that are derogatory in nature—intending to demean or humiliate, and harassment based on sexual orientation and gender identity/expression." *Id.*

40. In August 2022, the Respondent sent each student a digital or hard copy of the 2022–23 FCPS "Student Rights & Responsibilities" guide ("SR&R"), which required that parents acknowledge via signature that they had read, understood, and accepted on behalf of their child, the rights and responsibilities articulated in the guide. A true copy is attached as *Exhibit 4.*

41. The 2022–23 SR&R stated that students have "the right to access restroom and locker room facilities and other non-stigmatizing accommodations that are consistent with the student's gender identity, faith, and for any other reasons as identified in Regulation 2603." *Id.* at 10.

42. The 2022–23 SR&R also stated that students have "[t]he right to be called by their chosen names and pronouns." *Id.*

43. Pursuant to the 2022–23 SR&R, students can be punished for accidentally misgendering another student by referring to them by the pronouns that match his or her biological sex.

11

44. In the Glossary, the 2022–23 SR&R defines "misgendering" as "the act of labeling others with a gender that does not match their gender identity—deliberately *or accidentally*." *Id.* at 36 (emphasis added).

45. Appendix D of the 2022–23 SR&R is FCPS Regulation 2601.36P, which is entitled "Student Rights and Responsibilities." *Ex. 4* at 50–122.

46. This Regulation specifies disciplinary consequences for students who violate school policies.

47. Of relevance to this case, however, Regulation 2601.36P Code RB9h provides for discipline for "slurs based upon the actual or perceived gender identity (which includes, but is not limited to, malicious deadnaming or malicious misgendering)." *Id.* at 71.

48. Regulation 2601.36P Code RB9i provides for discipline for students who use "slurs based upon the actual or perceived gender expression." *Id.*

49. Regulation 2601.36P Code BSC8f provides for discipline for "[d]discriminatory harassment (includes harassing conduct): Gender identity." *Id.* at 72.

50. Standard disciplinary measures for violations of Codes RB9h, RB9i, and BSC8f are Level 2 and Level 3, with an option for Level 4 discipline for a violation of BSC8f.

51. Level 2 and Level 3 disciplinary measures include punishments such as weekday detention, Saturday detention, removal from student activities for up to 14 calendar days, out-of-school suspension, and "behavioral instruction." *Id.* at 77–78.

52. Level 4 disciplinary measures include punishments such as referral to

the IEP team, removal from student activities for 21 days, out-of-school suspension, and possible referral to law enforcement.

53. The Respondent's policies, then, provide for immediate discipline of up to a three-week suspension for "misgendering" which could be accidental, done without malice, or done because the Petitioner's religious beliefs teach that there are two sexes and to recognize otherwise is to give a verbal salute to a highly controversial political and religious position.

54. The Respondent made changes to the SR&R for the 2023–24 school year, but the definitions, prohibitions, and disciplinary options described above remain the same. *See* Regulation 2601.37P at 23–24, 29–31. A true copy of the 2023–24 FCPS Students Rights and Responsibilities Guide is attached as *Exhibit 5*.

55. The SR&R for the 2024–25 school year contains the same regulations, definitions, and disciplinary regime as the prior two school years.

56. Following the November 2023 elections, the current board members were sworn into office on December 13, 2023. Rather than take the oath of office by swearing on a Bible, Torah, Koran, or other religious text (as is traditional), the current chair of the Respondent school board took his oath on a book that is based on the idea that sex is not immutable but rather determined by one's gender identity and expression.

57. On March 5, 2024, Jane Doe filed her first petition in this litigation, to which the Respondent filed a demurrer.

58. On July 25, 2024, the Fairfax County Circuit Court issued a decision on

the Respondent's demurrer in which the Court ruled that the Petitioner had sufficiently pled that the Respondent's policies violated her free expression, free exercise rights, and due process rights, both as applied to her and facially. The Court further ruled that the Petitioner sufficiently alleged that the restroom policies discriminated against Jane Doe on the basis of religion and sex, but the Court sustained the demurrer on those claims finding that she had not alleged discriminatory intent or purpose. The Court provided leave to amend with respect to those elements.

59. After the Court's ruling regarding Jane Doe's claims, the Respondent announced to the media that it would continue to apply the policies at issue in this case, stating: "Our policies will remain in place as this case proceeds."

60. As recently as August 1, 2024, the Respondent directed teachers at FCPS to review a training document entitled "Gender-Expansive and Transgender Students." The training document prioritizes "Gender Identity" over "Sex Assigned at Birth." The former is defined as "a person's sense of their own identity as a boy or man, girl or woman, or something in between or outside the male-female binary" whereas the latter is described merely as "a label, generally male or female, that is typically assigned at birth and recorded on the birth certificate."

61. The training also mandates that students be allowed to use facilities consistent with gender identity while prohibiting grouping students based on mere gender.

### *Jane Doe's Education History and Beliefs*

62. At all times relevant to the facts giving rise to this petition, Jane Doe

14

was an FCPS high school student.

63. Jane Doe consistently attended FCPS from 2014, when she was in third grade, until June 2024, when she graduated.

64. Jane Doe was at all relevant times and remains a practicing Roman Catholic who strives to live in accordance with her faith daily.

65. Jane Doe has completed the Catholic Catechism curriculum and the sacraments of Baptism, Penance, Eucharist, and Confirmation. She regularly attends Catholic Mass and participates in youth groups through the Catholic Church.

66. Because of her beliefs as a practicing Roman Catholic, Jane Doe has sincerely held beliefs that govern her views about human nature, marriage, gender, sexuality, morality, politics, ethics, natural law, and social issues.

67. Through her faith as a practicing Roman Catholic, Jane Doe has learned and sincerely believes that God creates each person as male or female, that the complementary sexes reflect the image of God, that sex cannot be altered, and that rejection of one's biological sex is a rejection of the image of God within that person.

68. Jane Doe also believes that to acknowledge or endorse that sex can be altered is to speak against God and her sincerely held religious and philosophical beliefs.

69. Jane Doe further believes that referring to another person using pronouns that do not correspond with biological sex is harmful to that person because it is false.

70. Jane Doe further believes that referring to another person using pronouns that do not correspond with biological sex is harmful to herself because it forces her to lie.

71. Jane Doe also believes that, based on scientific evidence, there are only two anatomical sex presentations, which are male and female.

72. For students who may not be comfortable using facilities that correspond with their biological sex, Jane Doe supports those students having access to the use of private restrooms.

73. Also, for students who may not be comfortable using pronouns that correspond with their biological sex, Jane Doe supports their choice to use the pronouns with which they are comfortable.

74. Similarly, Jane Doe supports the right of students to choose to refer to other students and teachers by their chosen pronouns, even when they do not correspond to biological sex.

75. Jane Doe does not support, however, any government policy compelling students to refer to other students and teachers by their chosen pronouns when they do not correspond with biological sex, and she strongly objects to any attempt to make her endorse, adopt, or otherwise engage in such speech.

76. Jane Doe believes that being compelled to share common, female-designated facilities with members of the opposite sex, including restrooms, directly contradicts her faith as a Roman Catholic, compromises her privacy and modesty, and makes her feel unsafe and uncomfortable.

77. Jane Doe further believes that being forced to choose between feeling safe and comfortable in a common female restroom and her sincerely held religious beliefs forces her to choose between her constitutionally protected right to not be subject to sex discrimination and her constitutionally protected right to free exercise of her faith.

### *S.A.1, V.A., and S.A.2's Education History and Beliefs*

78. S.A.1 is currently a high school student at FCPS and has attended FCPS since 2014.

79. V.A. is currently a middle school student at FCPS and has attended FCPS since 2016.

80. S.A.2 is currently an elementary school student at FCPS and has attended FCPS since 2018.

81. All three boys strive to live daily according to their belief in God.

82. All three boys have sincerely held religious and philosophical beliefs that govern their views about human nature, marriage, gender, sexuality, morality, politics, ethics, natural law (to varying degrees based on their age), and social issues.

83. All three sincerely believe that God creates each person as male or female, that the complementary sexes reflect the image of God, that sex cannot be altered, and that rejection of one's biological sex is a rejection of the image of God within that person.

84. All three believe that to acknowledge or endorse that sex can be altered is to speak against God and his own sincerely held religious and philosophical beliefs.

85. All three further believe that referring to another person using pronouns that do not correspond with biological sex is harmful to themselves because it forces them to lie.

86. All three also believe that, based on scientific evidence, there are only two anatomical sex presentations, which are male and female.

87. All three boys do not support any government policy compelling them (or any other student) to refer to any students or teachers by that person's "chosen pronouns" when doing so rejects biological sex. They strongly object to any attempt to make them endorse, adopt, or otherwise engage in such speech.

88. To avoid being reported, investigated, and disciplined, all three avoid speaking with (and about) other students who may be "gender expansive" or transgender, and to the extent they do speak about such students, each of them avoids using pronouns.

89. All three believe that being required to share a common male restroom with females forces them to compromise their comfort, privacy, and sincerely held belief that sex is biologically determined at conception and is immutable.

***The Board's pronoun policies, practices, and procedures violated the Petitioners' free speech and free exercise rights under the Virginia Constitution.***

90. The Petitioners have received and reviewed the FCPS SR&R Guide as required before each school year. They understand the disciplinary consequences that they could face for "misgendering" another student.

91. The Petitioners also believe that there is a culture of fear that exists at

FCPS, where students are afraid of getting disciplined or chastised by staff, ostracized by other students, and branded as intolerant or unwelcoming if they do not accept or rubber stamp other students claims to be "gender-expansive" or "transgender."

92. The Petitioners have reviewed Policy 1450.7, Regulation 2603.2, and Regulation 4952.5.

93. The Petitioners do not believe in the concepts or definitions contained in Regulation 2603.2 related to "gender identity," "gender-expansive," and "transgender,"—as such definitions are in direct opposition to their religious beliefs— and thus do not understand how they can avoid violating Regulation 4952.5 and Policy 1450.7.

94. Because of the Petitioners' sincerely held philosophical and religious beliefs, they do not believe in the concepts and definitions contained in Regulation 2603.2, and to endorse or accept the premise of those concepts and definitions would be to falsely act in contradiction to their beliefs, violating their constitutional rights.

95. The Petitioners also believe that, even if those concepts and definitions did not violate their sincerely held philosophical beliefs, it is objectively and subjectively unclear what conduct or speech would constitute "misgendering" under Regulation 2603.2, Regulation 4952.5, and the FCPS SR&R Guide.

96. As a result, the Petitioners reasonably fear being subject to discipline for acting and speaking in a way that, although consistent with their sincerely held

19

philosophical and religious beliefs, would be in violation of Policy 1450.7, as applied by Regulations 4952.5 and 2603.2.

97. At the beginning of the 2023–24 school year, the Petitioners received the 2023–24 SR&R. Unlike in years prior, where parents would merely need to sign and acknowledge receipt and understanding of the rights and responsibilities articulated in the SR&R, FCPS stopped providing parents with hard copies to sign, instead requiring that students (including Petitioners Jane Doe, S.A.1, and V.A.) watch a video and take a test on the SR&R. Signature and acceptance of the SR&R, a requirement of each student, was predicated on a student answering 70 percent of the questions "correctly." FCPS staff failed to clearly explain to students that passing the test would result in the signature and acceptance of the SR&R.

98. The video that the Petitioners were compelled to watch, and did watch, contained a slide stating: "The right to access restroom and locker room facilities and other non-stigmatizing accommodations that are consistent with your gender identity, faith, and for any other reason." A true and accurate depiction of that slide is attached as *Exhibit 6*. A true and accurate copy of the test is attached as *Exhibit 7*.

99. The test that Jane Doe and S.A.1 were required to take included the following assertion: "A student has the right to be called by their chosen name and pronoun." *Ex. 7* at 3. Students were required to select "true" or "false," with "true" being the "correct" answer. *Id.*

100. Aware that the SR&R test posed that question, Petitioners Jane Doe,

S.A.1, and V.A. refused to take the test (S.A.2 was not given the test), as doing so would require them to either speak against their sincerely held philosophical and religious beliefs or speak in confirmation of those sincerely held philosophical beliefs and face potential discipline, chastisement, and/or social ostracization.

101. Jane Doe was told in person by her teacher that she needed to take the SR&R test, and the teacher gave her a written note that instructed her to take the SR&R test.

102. The teacher followed up his in-person and written requests to Jane Doe with two emails informing her that she needed to take the SR&R test.

103. On September 26, 2023, other students who refused to take the SR&R test were required to go to the cafeteria and take the test under supervision. Jane Doe was informed that she must go to the cafeteria to take the SR&R test, but she again refused.

104. Similarly, S.A.1 was called out over the loudspeaker in his school as needing to complete the test, in an effort by the Respondent to "name and shame" or force compliance through social pressure and ostracization.

105. In early October 2023, Jane Doe's mother emailed the school principal to inform him that Jane Doe would not be taking the SR&R test as it constituted "compelled speech" on "gender identity," among other topics that were contrary to their religious beliefs and family values.

106. A second FCPS employee then sent an email to Jane Doe's mother, instructing her that there was no opt-out for the SR&R and requiring her to sign, which she did not.

107. Also, during the first week of the 2023–24 school year, one of Jane Doe's teachers discussed the preferred pronouns policy in class at the beginning of the year by reading from a welcome packet, which some teachers indicated had been provided by the school principal. Jane Doe's teacher asked her and her classmates to discuss their preferred pronouns with each other.

108. Most of Jane Doe's teachers also required students to fill out a "Getting to Know You" form. The form was sent to Jane Doe through Schoology, an internal online platform allowing teachers to communicate with students. Jane Doe's teachers told her that the school's principal had requested this form be filled out by students.

109. In that form, students were asked to provide their name and, in the line immediately after their name, their "Preferred Name and pronouns." A true and accurate depiction of a portion of this survey is attached as *Exhibit 8.*

110. The question asking for "Preferred Name and pronouns" included an asterisk next to it, indicating that it was required to answer the question in order to submit the form. *Id.*

111. During the 2022–23 year, Jane Doe's history teacher had also required students to fill out a similar form, requesting that they provide her pronouns.

112. Jane Doe believed that answering questions asking her to state her pronouns violated her sincerely held philosophical and religious beliefs, but she answered the questions out of fears of discipline, chastisement, and/or social ostracization.

113. Jane Doe has also been made aware of a similar "Getting to Know You" form required by teachers at a different FCPS high school where students were compelled to answer whether they used "she/her," "he/him," they/them," or "other" pronouns, with a space to enter the pronouns next to other. A true and accurate copy of this survey is attached as *Exhibit 9*.

114. The students at a separate FCPS high school were also required to answer whether the teachers could "use this pronoun when I contact caregivers?" *Id.*

115. On August 22, 2023, Jane Doe's mother emailed the principal about the Petitioner being required to fill out the "Getting to Know You Form," Jane Doe being required to discuss pronoun usage with other students and all of her teachers, discussing pronouns during the first week of school. Jane Doe's mother also asked about the SR&R test and was told by the principal that it was required for acknowledgment and signature of the SR&R.

116. Since the enactment of Regulation 2603.2, Jane Doe's teachers refer to students by their preferred pronouns, even when they do not match their biological sex, and expect students to do the same.

117. At the beginning of the 2023–24 school year, Respondent required all

students in S.A.2's elementary school to watch a video explaining the student rights and responsibilities outlined in the SR&R. The video informed students that they had the right to use restrooms that match their gender identity and the right to have that identity affirmed.

118. Also, at the beginning of the 2023–24 school year, V.A. was given a survey that asked for his preferred pronouns. When he objected, a school counselor informed him that he could not opt out of the survey.

119. As a result of the Respondent's policies, regulations, practices, and procedures related to pronoun usage, the Petitioners have felt extreme social pressure to suppress their sincerely held philosophical and religious beliefs and affirm a concept that is anathema to those beliefs—that sex and gender is not an immutable characteristic given by God in his image, but instead fluid, changeable, and properly defined by Regulation 2603.2.

120. Consequently, the Petitioners have lived in daily fear that speaking in a manner that is consistent with their sincerely held philosophical and religious beliefs would result in discipline, chastisement, and/or social ostracization.

121. They have further felt compelled to acknowledge, as correct, the School Board's position and viewpoint on controversial issues where they fundamentally disagree—regardless of their religious beliefs.

122. Petitioners thus engaged in a practice of self-censoring, in which they have attempted, to the best of their ability, to avoid using pronouns altogether when

addressing or discussing individuals whose may be gender expansive or transgender or whose "gender identity," as defined by Regulation 2603.2, could change by the month, week, day, or even minute.

***The Board's restroom policies, practices, and procedures violated Jane Doe's free exercise rights under the Virginia Constitution, discriminated against her on the basis of her religious beliefs, and discriminated against all the Petitioners on the basis of sex.***

123. On May 17, 2023, Jane Doe was entering a female bathroom with her friend. Knowing that someone was behind her but not knowing who, she held the door open for that person.

124. Jane Doe then realized that she was holding the door open for Richard Roe ("Roe"), a male student significantly larger than Jane Doe, who was a freshman at the time.

125. Upon information and belief, Roe does not identify as a female, nor does he identify as transgender.

126. Sharing a restroom with a man would be contrary to Jane Doe's sincerely held philosophical and religious beliefs and her desire for modesty and privacy as a woman, so Jane Doe chose not to enter the restroom and went to a different bathroom.

127. Upon information and belief, Roe considers himself "gender-expansive," as defined by Regulation 2603.2. He consistently uses the male and female restroom interchangeably and has done so since at least May of 2023.

128. On May 18, 2023, Jane Doe told her mother that there was a male using

the female restroom at her school and that this had been a regular occurrence.

129. The same day after receiving this information from Jane Doe, her mother called the school principal. She informed him that her daughter told her that a male student was regularly using the female restrooms at FCPS, that her daughter witnessed this the day before when attempting to use the restroom, and that her daughter was so uncomfortable with this that she immediately went to find a different bathroom. Jane Doe's mother told the principal Roe's name, and he told her that he would investigate the matter using "video and other methods."

130. Jane Doe's mother asked the principal if anything could be done to prevent Roe from using the female restroom in the future, and he responded by referencing the SR&R and stating that school policy allows students to use the restroom that aligns with their declared gender identity.

131. Following the call, Jane Doe's mother sent an email to the principal reiterating her concerns and including screenshots from Roe's Instagram page, which indicated that he attended the same school as Jane Doe and went by the pronouns "he/they."

132. On May 19, 2023, the principal replied and asked for a time to discuss the matter with Jane Doe's mother.

133. Jane Doe's mother was traveling during the time when the principal sent his response email and did not see it, so on May 23, 2023, he again replied to the original email from Jane Doe's mother, thanking her for contacting him and providing

a map of individual bathrooms for Jane Doe to use.

134. According to the map provided to Jane Doe's mother by the principal, there are nine sex-segregated, shared bathrooms spread among three floors at the high school. The principal pointed to four facilities that Jane Doe could use: two single-use bathrooms on the first floor, one single-use bathroom on the second floor, and the health clinic on the second floor.

135. After exchanging emails with the principal, Jane Doe's mother emailed an FCPS Assistant Superintendent ("Asst. Super."), asking for a phone call "to discuss an incident that keeps happening in my daughter's school, keeping her and other girls from feeling safe in their bathrooms."

136. Jane Doe's mother spoke to Asst. Super. on May 30, 2023. Asst. Super. indicated that she was made aware of the details through the principal and confirmed that the SR&R and Regulation 2603.2 allowed students to use bathrooms that correspond to their gender identity.

137. Jane Doe's mother asked Asst. Super. what FCPS would do to protect the safety and privacy of her daughter and other girls, and Asst. Super. responded that it was not her job to set policy but rather to enforce it.

138. Asst. Super suggested that Jane Doe reach out to the school board and vote during the next elections. Finally, Asst. Super. indicated that the positive that came from the report was that FCPS was now aware of the situation concerning Roe and could form a response team to assist him.

139. Receiving no substantive assistance from FCPS, Jane Doe was thus confronted with another choice. On one hand, she could continue to use the common-use restrooms, even though it would require her to act in contradiction of her sincerely held philosophical and religious beliefs, compromise her right to privacy, and offend her sense of modesty as a female. On the other hand, she could stay true to her beliefs, protect her privacy, and maintain her modesty as a female by only using one of the four out of thirteen restrooms at the high school.

140. Given the inconvenience and unequal access to bathrooms where she could feel safe and comfortable, vis-à-vis Roe, Jane Doe chose to limit her use of restrooms as much as possible while at school. Virtually every day, Jane Doe avoided using school restrooms and only did so when absolutely necessary.

141. Roe, now a Junior, will continue to attend high school in the 2023–24 school year, and he still consistently uses the male and female restroom interchangeably.

142. Jane Doe is not the only student at the high school who objected to Roe using a female restroom. In February of 2024, a student-run Instagram page posted several anonymous statements by students objecting to Roe's use of female restrooms.

143. In response to these concerns, an individual believed to be Roe, wrote: "I go in the girls bathroom for safety reason[sic], in the boys bathroom I've been threatened to be jumped multiple times, raped, and screamed at every time. In the girls bathroom no one has ever said anything to me about how they are so uncomfortable,

stop being a little bitch behind ur spam account is[sic] embarrassing. My counselor and principal all said I'm allowed to go in there, I don't even look at any of you I go in a stall. You go to a public school not everything is catered to you."

144.  In July 2024, S.A.1 emailed the principal of his school and stated that, because of his beliefs, he felt uncomfortable and embarrassed by having to use a common male restroom in the presence of females and does not want to use the pronouns of students that do not align with biological sex. The principal responded by telling S.A.1 that he could use the single-use bathrooms at the school and that the front office could provide him with a map. He did not respond to S.A.1's communication about compelled pronouns. A copy of this email exchange is attached as *Exhibit 10*.

145.  In July of 2024, V.A. emailed the principal of his school and stated that, because of his beliefs, he felt uncomfortable and embarrassed by having to use a common male restroom in the presence of females and does not want to use pronouns of students that do not align with biological sex. The principal responded by telling V.A. that he could use the single-use bathrooms at the school and that Regulation 2603 requires that students refer to other students by their preferred name and pronoun. A copy of this email exchange is attached as *Exhibit 10*.

### Statements of Law

146.  At all times relevant, each and all the acts and policies alleged in this Complaint were attributed to the Respondent who acted under color of a statute, regulation, or custom of the Commonwealth of Virginia.

147. Respondent's policies and procedures concerning chosen names and pronouns are facially unconstitutional, as they compel speech on a sensitive political topic and provide no accommodation to students who object on the grounds of free exercise or free expression.

148. Regulation 2603.2 is so vague that ordinary citizens must guess its meaning and will differ as to the rule's application, such that it unconstitutionally deprives citizens of liberty without due process of law.

149. Regulation 2603.2 violated the Petitioners' constitutional free expression, free exercise, and due process rights by mandating that they give a verbal salute to gender identity and transgenderism and by forcing them to use another individual's chosen names and pronouns or face discipline.

150. Respondent's policies and procedures concerning restrooms facially discriminate against religion in favor of secular beliefs. Those policies intentionally elevate gender identity over free exercise rights in all circumstances. A gender-expansive or transgender student is entitled to live life in accordance with his or her secular beliefs by using either the common restroom of their biological sex or the common restroom of the sex which they identify. Under no circumstances will a gender-expansive or transgender student be required to use a private restroom in order to live his or her daily life in accordance with his or her secular beliefs. Conversely, when a student objects to sharing a restroom with a member of the opposite sex on free exercise grounds, the Respondent's policies require that the student use a private restroom in order to live his or her daily life in accordance with his or her faith.

151. Respondent's policies and procedures concerning restrooms intentionally discriminate on the basis of sex. The purpose of the classifications "gender-expansive" and "transgender" is to eliminate the immutability of biological sex along with the protected status that the Virginia Constitution provides to the immutable characteristic of biological sex. That purpose has manifested itself in a policy that intentionally treats students whose gender expression and gender identity are different than their birth sex more favorably than students whose gender expression and gender identity are the same as their birth sex.

152. The Respondent applied Regulation 2603.7 in a manner that unconstitutionally discriminated against Jane Doe on the basis of free exercise of religion and her sex.

153. The Respondent applied Regulation 2603.7 in a manner that violated her free exercise rights by rejecting her request for accommodation that did not pose a substantial threat to public safety, peace, or order.

154. The Respondent applied Regulation 2603.7 in a manner that unconstitutionally discriminated against S.A.1, V.A., and S.A.2 on the basis of sex.

155. Respondent knew or should have known that they were violating Petitioners' (and others') statutory and constitutional rights and did violate Petitioners' constitutional rights by enacting Regulation 2603.2 and applying it to the Petitioner in violation of their constitutional rights.

156. The policies and practices that led to the violation of the Petitioners' statutory and constitutional rights remain in effect.

31

157. The unconstitutional policies and practices that led to the violation of the Petitioners' constitutional rights raise an issue of great public interest and impact every student at FCPS and their individual statutory and constitutional rights.

158. Compelling the Petitioners to act and speak in a way that is contrary to their sincerely held philosophical and religious beliefs in order to conform to a highly sensitive government-sponsored ideology on sex and gender does not serve any legitimate or compelling state interest and is not narrowly tailored to serve any such interests.

159. Purposely discriminating against the Petitioners for acting and speaking in a manner consistent with her sincerely held philosophical and religious beliefs does not serve any legitimate or compelling state interest and is not narrowly tailored to serve any such interests.

160. Purposely discriminating against the Petitioners on the basis of sex does not serve any significant state interest and is not narrowly tailored to serve any such interests.

161. Respondent's actions have caused injury and continue to cause injury to the Petitioners, including depriving them of her statutory and constitutional rights.

<u>**Count I**</u>
**Violation of Virginia Constitution art. I, § 16 and the 1786 Act for Religious Freedom, Code of Virginia § 57-1**
**Free Exercise of Religion (Facial and As Applied)**

162. The Petitioners incorporate paragraphs 1–161 stated above.

163. By threatening to punish the Petitioners for expressing their sincerely

held philosophical and religious beliefs, which manifest in the way that they discuss issues related to gender identity, including the use of pronouns consistent with a person's biological sex, the Respondent has violated and continues to violate the Petitioners' right to the free exercise of religion under the Virginia Constitution and the Act for Religious Freedom.

164. The Petitioners' views and expressions related to gender identity, including the use of pronouns, are motivated by their sincerely held religious beliefs and are avenues through which they exercise their faith.

165. Expressing the Respondent's mandated message on gender identity would require the Petitioners to violate their sincerely held religious beliefs.

166. Threatening to punish the Petitioners for not using pronouns that violate their conscience caused them to suffer on account of their religious beliefs.

167. Threatening to punish the Petitioners for not using pronouns—when doing so would violate their conscience—restricts their "freedom to profess, and by argument, to maintain, [her] opinions in matters of religion" and diminishes their civil capacities. VA. CODE ANN § 57-1.

168. Respondent's regulations and their interpretation and enforcement of the regulations create a religious test for students.

169. Respondent's regulation, through the discipline and enforcement provisions, require immediate and mandatory discipline for the violation of the policy. But to comply with the policy, and thereby avoid the disciplinary regime of the Respondent's regulations, the Petitioners must violate their rights to free exercise of religion

as guaranteed by the Virginia Constitution and the Act for Religious Freedom.

170. The Respondent's actions have caused injury to the Petitioners and will continue to cause injury to S.A.1, V.A., and S.A.2.

**<u>Count II</u>**
**Violation of the Code of Virginia § 57-2.02**
**Petitioners' Right to Exercise Religious Freedom**

171. The Petitioners incorporate paragraphs 1–170 stated above.

172. The Petitioners' sincerely held religious beliefs prohibit them from using female pronouns to refer to a male and vice-versa.

173. By compelling the Petitioners and others to use male pronouns to refer to a female, and vice versa, or be disciplined, the Respondent imposed a substantial burden on the Petitioners' religious exercise and continues to impose a substantial burden on any other student's religious exercise.

174. The Respondent's policies are an attempt to coerce the Petitioners into changing or violating their sincerely held religious beliefs on pain of punishment and scholastic discipline.

175. Compelling the Petitioners to use female pronouns to refer to a male student, and vice versa, does not further a compelling government interest and is not narrowly tailored to further any compelling government interest.

176. Threatening to discipline the Petitioners or compelling them to speak specific words is not the least restrictive means of furthering the Respondent's stated interests.

177. Threatening to punish the Petitioners and others for not complying with

the regulations violated the Petitioners' civil rights under VA. CODE ANN. § 57-2.02 and continue to violate the rights of others under VA. CODE ANN. § 57-2.02.

178. The Respondent's actions have caused injury to the Petitioners and will continue to cause injury to S.A.1, V.A., and S.A.2.

**Count III**
**Violation of the Constitution of Virginia art. I, § 12**
**Free Speech: Viewpoint and Content Discrimination**
**(Facial and As Applied)**

179. The Petitioners incorporate paragraphs 1–178 stated above.

180. By threatening to punish the Petitioners and others for expressing their views regarding gender identity and for not expressing the Respondent's views regarding gender identity, the Respondent has engaged in content and/or viewpoint discrimination in violation of the Virginia Constitution.

181. The Respondent's regulations required the Board or its designees to evaluate the content and viewpoint of student expression to determine whether it is consistent with the mandates of their regulations and practices.

182. The discussion of how to respond to individuals claiming to be gender-expansive, issues like gender identity, and whether to alter the use of pronouns or not use pronouns is a matter of public concern and debate.

183. Compelling an individual to express an objective biological falsehood is not a lawful message.

184. The discussion of, or response to, individuals claiming to be gender-expansive and issues like gender identity is not curricular speech.

185. Using or not using pronouns to refer to other students is not curricular or academic speech.

186. The Petitioners' expression, or lack thereof, regarding gender identity is protected by the Virginia Constitution.

187. By threatening to discipline the Petitioners for not endorsing the Respondent's favored viewpoints, which it has mandated through its policies, the Respondent has threatened to punish the Petitioners for exercising their right to engage in expression, or lack of expression, that the Virginia Constitution protects.

188. The Respondent's regulations and their threatened enforcement of those policies to discipline the Petitioners have violated their right to freedom of expression as guaranteed by the Virginia Constitution and will continue to violate the rights of others in the same way.

189. The Respondent's actions have caused injury to the Petitioners and will continue to cause injury to S.A.1, V.A., and S.A.2.

<u>**Count IV**</u>
**Violation of the Constitution of Virginia art. I, § 11**
**Deprivation of Due Process of Law (Facial and As Applied)**

190. The Petitioners incorporate paragraphs 1–189 stated above.

191. The Virginia Constitution prohibits the deprivation of liberty without due process of law.

192. Rules that use terms that are so vague that ordinary citizens must guess at their meaning and will differ as to the rule's application unconstitutionally deprive citizens of liberty without due process of law.

193. A rule must afford citizens a reasonable opportunity to know what is prohibited in order to comply with constitutional due process requirements.

194. Rules that restrict or compel speech or action must meet a higher standard of specificity to satisfy constitutional due process requirements.

195. The Respondent's regulations and their enforcement of those regulations are unconstitutionally vague, ambiguous, and contradictory.

196. The Respondent's policies, regulations, and related practices are unconstitutionally vague because they prohibit discrimination on the basis of "sex" and "gender identity," which are inherently in conflict.

197. The Respondent's policies, regulations, and related practices are unconstitutionally vague because its definition of "gender-expansive" is vague and overbroad, such that ordinary citizens must guess at their meanings and will differ as to the definitions and the circumstances under which their use of pronouns is under restriction or compulsion and subject to sanction.

<u>**Count V**</u>
**Violation of the Constitution of Virginia art. I, § 11**
**Petitioners' Right to be Free from Religious Discrimination**
**(Facial and As Applied)**

198. Petitioners incorporate paragraphs 1–198 stated above.

199. By requiring the Petitioners to use single-use restrooms in order to be able to exercise their sincerely held religious beliefs, the Respondent has violated and is continuing to violate the Petitioners' right to be free from governmental discrimination under the Virginia Constitution.

200. Jane Doe was similarly situated to other West Springfield High School students, including Roe.

201. Roe has stated that he needs to use a restroom where his safety and comfort are not compromised. The Respondent did not direct or require Roe to use one of the four single-use restrooms at West Springfield High School. Rather, the Respondent, applying its regulations, gave Roe the right to use the female restroom.

202. Jane Doe desired to use a common female restroom where she will not be compromised in the free exercise of her religion. Pursuant to its regulations, the Respondent required Jane Doe to use one of the four single-use restrooms at West Springfield High School as the sole means to use the bathroom in a manner that would not compromise her free exercise of religion.

203. S.A.1, V.A., and S.A.2 desire to use common male restrooms where they will not be compromised in the free exercise of their religion by being forced to share such restrooms with biological females. S.A.1 and V.A. explicitly expressed this desire to the principals at their respective schools. Pursuant to the Respondent's regulations, the principals instructed S.A.1 and V.A. that they could use the single-use bathrooms if they were uncomfortable using a common male restroom that biological females could use.

204. The purpose, intent, and plain language of Respondent's regulations and related practices is to create a new classification of students (gender-expansive and transgender) and provide them the right to use any common restroom, allowing them

to live their daily life in accordance with their secular views. Conversely, the Respondent's regulations only allow students the ability to use a common restroom that will allow them to live their daily life in accordance with their faith, subject to the rights of those students classified as gender-expansive and transgender.

205. The Respondent applied its regulations and related practices to the Petitioners in a discriminatory and unequal manner, giving other students the right to use common restrooms in a manner that conforms to their views on gender identity while denying the Petitioners the right to use a common restroom in a manner that would allow them to live their daily life in accordance with her faith.

206. The Respondent's actions have caused injury to the Petitioners and will continue to cause injury to S.A.1, V.A., and S.A.2.

**<u>Count VI</u>**
**Violation of the Constitution of Virginia, art. I, § 11**
**Discrimination on the Basis of Sex**
**(Facial and As Applied)**

207. The Petitioners incorporate paragraphs 1–206 stated above.

208. The purpose, intent, and plain language of Respondent's regulations and related practices is to provide greater rights to students whose gender expression and gender identity is different from their biological sex than it does to students whose gender expression and gender identity is the same as their biological sex.

209. By requiring Jane Doe to use only a single-use restroom in order to be able to maintain her sense of modesty, privacy, safety, and comfort as a biological female who expresses and identifies as a female, while allowing a gender-expansive

or transgender student to maintain his sense of modesty, privacy, safety, and comfort in a female common restroom, the Respondent has violated Jane Doe's and others' right to be free from governmental discrimination on the basis of sex under the Virginia Constitution.

210. Pursuant to its regulation and related practices, the Respondent granted an accommodation to Roe to feel safe and comfortable in the use of a common female restroom.

211. Pursuant to that same regulation and related practices, the Respondent has required Jane Doe to make a choice between maintaining her modesty, privacy, safety and comfort by using one of the four single-use bathrooms in West Springfield High School, or compromising her modesty, privacy, safety and comfort by sharing the female restrooms with a biological male.

212. S.A.1, V.A., and S.A.2 desire to use common male restrooms where they will feel safe, private, and comfortable by not being forced to share such restrooms with biological females.

213. S.A.1 and V.A. expressed this desire to the principals at their schools. Pursuant to the Respondent's regulations, though, the principals instructed S.A.1 and V.A. that they could use the single-use bathrooms if they were not comfortable using a common male restroom that biological females could also use. The Respondent's regulations and related practices have been applied to discriminate intentionally against the Petitioners because their gender expression and gender identity are the same as their biological sex.

214. The Respondent's actions have caused injury to the Petitioners and will continue to cause injury to S.A.1, V.A., and S.A.2.

<u>**Count VII**</u>
**Violation of Virginia Constitution art. I, § 16 and the 1786 Act for Religious Freedom, Code of Virginia § 57-1**
**Free Exercise of Religion (Facial and As Applied)**

215. The Petitioners incorporate paragraphs 1–214 stated above.

216. Using common female restrooms that biological males can also use burdens Jane Doe's right to use such restrooms in a manner that is consistent with her sincerely held religious beliefs.

217. Using common male restrooms that biological females can also use burdens the right of S.A.1 and V.A. to use such restrooms in a manner that is consistent with their sincerely held religious beliefs.

218. The Petitioners have requested that the Respondent accommodate them by returning to the practice of requiring that sex-segregated common restrooms be segregated on the basis of biological sex.

219. The Respondent has declined to provide the Petitioners with their requested accommodation despite the fact that the requested accommodation does not pose a substantial threat to public safety, peace, or order.

220. The Respondent's actions have caused injury to the Petitioners and will continue to cause injury to S.A.1 and V.A.

**Prayer for Relief**

**WHEREFORE,** the Petitioners respectfully request that this Court enter

41

judgment against the Defendant and provide the Petitioners with the following relief:

A. A declaratory judgment that the Respondent's regulations and related practices violated, and continue to violate:

1. The Petitioners' right to free expression under the Virginia Constitution, Article I, § 12;

2. The Petitioners' right to free exercise under the Virginia Constitution, Article I, § 16;

3. The Petitioners' right to free exercise under VA. CODE ANN. § 57-2.02;

4. The Petitioners' right to due process under the Virginia Bill of Rights, Article I, § 11;

5. The Petitioners' right to be free from government discrimination on the basis of religion under the Virginia Constitution, Article I, § 11;

6. The Petitioners' right to be free from government discrimination on the basis of sex under the Virginia Constitution, Article I, § 11.

B. Declaratory judgment that the Respondent's policy 2603.2 is incompatible with the guarantees of freedom provided by the Constitution and Code of Virginia.

C. A permanent injunction prohibiting the Respondent, its agents, officials, servants, employees, and any other person acting on its behalf from enforcing Regulations 2603.2 and 4952.5 to: (i) compel individuals to express ideas regarding identity that violate their conscience, including referring to or addressing students using pronouns different than their biological sex, or (ii) prohibit individuals from expressing views regarding gender identity or to punish them for expressing those views,

42

including addressing and referring to students based on their biological sex.

D. A permanent injunction prohibiting the Respondent, its agents, officials, servants, employees, and any other person acting on its behalf from enforcing Regulations 2603.2 and 4952.5 which allow students to use restrooms of the opposite sex.

E. Nominal damages for the violation of the Petitioners' constitutional rights; and

F. All other further relief to which the Court may deem proper and to which the Petitioners may be entitled.

Dated: August 22, 2024

Petitioner
BY COUNSEL

Andrew J. Block, VSB No. 91537
Ian Prior, (DC Bar No. 90001650)*
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, D.C. 20003
Telephone: (202) 836-7958
Email: Andrew.block@aflegal.org
    Ian.prior@aflegal.org

*Counsel for Petitioner*
*\*Admitted Pro Hac Vice*

# CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2024, the foregoing—the first amended petition for declaratory, injunctive, and additional relief—was electronically filed with the Clerk of Court using the File & ServeXpress System and that a true copy was delivered by electronic mail to counsel for the Respondent, Fairfax County School Board at:

Noah P. Sullivan (VSB No. 82698)
David R. Berry (VSB No. 90554)
Jon R.L. Roellke (VSB No. 98039)
Kate E. Pollard (VSB No. 99506)
GENTRY LOCKE ATTORNEYS
919 E. Main St., Suite 1130
Richmond, Virginia 23219
Tele: (804) 956-2062
Fax: (540) 983-9400
Email:     nsullivan@gentrylocke.com
           berry@gentrylocke.com
           jroellke@gentrylocke.com
           kpollard@gentrylocke.com

By: __/s/ Andrew J Block_____
      Counsel for Petitioner